JEROME JEFFRIES v. J. R. SNYDER, Appellant.

**Warehouse Man:** RIGHT TO SELL UNCLAIMED GOODS: *Notice.* Code 1873, section 2178, provides that if property stored remains unclaimed for more than six months, with charges unpaid, the warehouseman "shall" cause notice of sale of such property to be given to the owner, and, if the owner is unknown, the warehouseman shall institute certain proceedings before a justice and obtain an order for sale. Acts Twenty-sixth General Assembly, chapter 107, provides that when property remains in storage for three months, with charges unpaid, the warehouseman "may" take similar proceedings to that provided in section 2178. *Held,* that while such provisions entitled the warehouseman to sell goods for non-payment of charges, or not, at his discretion, if he d d so elect he must observe their requirements, and give the required notice.

EXEMPLARY DAMAGES. Under Code 1873, section 2176, allowing exemplary damages for violation of section 2175, prohibiting a warehouseman from selling stored property, except to enforce his lien

8   for storage, a warehouseman selling property for storage charges is not liable for exemplary damages where he acted without malice, fraud, or gross negligence, in a *bona fide* attempt to comply with the law.

NOTICE: *Sufficiency.* Under Acts Twenty-sixth General Assembly, chapter 107, authorizing a warehouseman to sell goods stored for more than three months, for non-payment of storage charges, on notice to the owner before the expiration of such time from the receipt of the goods, notice given after the expiration of such time, but before sale, is sufficient.

JURY QUESTION. Whether warehouseman's notices of the sale of goods for charges were posted in "public places," as required by Code 1873, section 2179, and whether or not actual notice was given to the owner, were questions for the jury.

INSTRUCTIONS: *Harmless error.* In an action against a warehouseman for an alleged wrongful sale of property stored and unclaimed for fourteen months, defendant was not prejudiced by failure of the court to charge as to his right to sell the goods remaining unclaimed for three months, as authorized by Acts Twenty-sixth General Assembly, chapter 107, amending Code 1873, section 178, which authorized the sale of goods unclaimed for six months for storage charges, where the court fully charges with reference to his rights under such section before amendment.

PLEA. Where a warehouseman, sued for a wrongful sale of goods stored, pleaded compliance with Code 1873, section 2178, authorizing sale for non-payment of storage charges, etc., and made no claim under Acts Twenty-sixth General Assembly, chapter 107, prescribing a different procedure for such sale, until after the trial, he cannot object that the court failed to instruct as to his rights under the latter act.

VALUE OF GOODS UNCLAIMED: *Jury question.* Under Code 1873, section 2178 requiring a warehouseman about to sell property stored for non-payment of charges to give a different notice in case the value of the property exceeds one hundred dollars than that required if the value of the property is less than one hundred dollars, it was proper to leave to the jury the question of the value of property, claimed to have been wrongfully sold, where the warehouseman made affidavit that the goods were worth less than one hundred dollars, and gave notice accordingly, and whether defendant knew, or by the exercise of ordinary care might have ascertained, that the property was worth more than one hundred dollars.

**Opinion Evidence;** VALUE OF HOUSEHOLD GOODS. One owning or using household goods is competent to testify as to their value, without showing special qualifications enabling him to express an opinion.

PROBATIVE FORCE. The fact that the only evidence of the value of goods at the time of an alleged wrongful sale was given by witnesses who had not seen the goods for eighteen months prior to the sale, during which the goods were stored, did not deprive such evidence of all probative force, since it will be presumed that the property had not suffered damage other than that caused by mere lapse of time.

OBJECTION IN LUMP. That a witness testifying to the value of goods was not competent to testify as to certain of the articles mentioned was not ground for rejecting his entire evidence.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

FRIDAY, JANUARY 26, 1900.

ACTION at law to recover for the conversion of a lot of household goods. The answer sets up that defendant was a warehouseman, and engaged in the storage business; that he received the property in question from plaintiff for storage, and after said property had remained in his custody, unclaimed, for a period exceeding six months, and the charges thereon not having been paid, he sold the same, in conformity to law, at public sale, for such charges, and, after deducting the cost and expense of said sale, he deposited the balance of the amount of the price received with the county treasurer, as provided by statute. There was a trial to jury. Verdict and judgment for plaintiff, and defendant appeals.— *Modified.*

*John J. Hess* for appellant.

*Finley Burke* and *C. B. Aitchison* for appellee.

WATERMAN, J.—The plaintiff, his brother-in-law, Palmer, who had possession of and used the goods for a time, and two expressmen, who hauled them to the storage warehouse, were permitted to testify to the value of the property. The testimony of Palmer and the expressmen was confined to a part of the goods; the two latter giving evidence only

as to common articles, whose condition they observed when hauling them. The goods consisted mainly of ordinary household articles. With them were some etchings and a silver tea set, to the value of which Palmer testified. It is claimed that these witnesses did not show themselves qualified to give testimony as to the value of this property. One need not show any special qualification, to enable him to.express an opinion as to the value of articles in common domestic use, especially if he owns or has used the same. The relaxation of the rule usually applied to opinion witnesses is required by necessity. Often no other evidence than that of the owner or possessor can be procured. In *Tubbs v. Garrison,* 68 Iowa, 44, this court said, speaking on this subject: "The verdict and judgment were for one hundred and sixty-two dollars and thirty cents. It is insisted that the property was not of that value. It may be conceded that, according to the testimony of the disinterested witnesses, it would appear that the verdict and judgment were too large. But, according to the testimony of the plaintiff and his wife, it would appear otherwise, and we cannot disregard their testimony. It is insisted, to be sure, that they were not competent witnesses, because it did not appear they were acquainted with the value of such property. But the property was ordinary household goods. It was such as all householders are accustomed to buy, and, while they may .not be the best judges of the value, we think that they may be presumed to have such knowledge upon the subject as to render them competent to testify upon it." See, also, *Thomason v. Insurance Co.* 92 Iowa, 72; *State v. Hathway,* 100 Iowa, 225; *Erickson v. Drazkowski,* 94 Mich. 551 (54 N. W. Rep. 283); *Tuttle v. Cone,* 108 Iowa, 468. As to the etchings, the silver set, and one or two other articles not usually found in common households, it may be that Palmer did not show competency to express an opinion as to the value. On direct examination he said that he knew their value, and the court properly permitted him to state it. On

cross-examination, 'it may be admitted, he was shown to have no such knowledge. But, when this fact was made known, defendant moved to strike out his testimony, not as to these special articles only, but as to all in relation to which he had spoken; and the competency of his testimony as to some of them can hardly be said to be attacked. It is true, he says he never bought or sold second-hand furniture in Council Bluffs, or knew of any being sold; but this fact does not destroy wholly the value of his opinion. Secondhand articles of this kind have no market value. One who knows their cost when new, and their condition at a particular time, may testify to their value at that time. *McMahon v. City of Dubuque,* 107 Iowa, 62. It is further urged in this connection that the measure of damages was the value at the time of the sale, and that none of these witnesses spoke to that. The goods had been in storage under defendant's charge during a period of some fourteen months. None of the witnesses had seen them during this time. It will not be presumed that the property suffered in defendant's custody more than would be caused by mere lapse of time. The evidence was the best that was obtainable in the nature of the case, and was properly received.

II. Under the head of instructions given and refused, a number of alleged errors are presented. The court instructed in conformity to the provisions of section 2178, Code 1873, which relates to sales by warehousemen for non-payment of storage charges. An amendment to this section (chapter 107, Acts Twenty-sixth General Assembly) seems to have been overlooked by the court. We set out the original section, with the amendment: "If any such property shall for six months remain in the possession, unclaimed, of any of the persons named in the preceding section, with the just and legal charges unpaid thereon, the person having the same in charge or possession *shall* first give notice to the owner or consignee, if his where-

abouts is known, and if not known, shall go before the nearest justice of the peace, and make affidavit, stating the time and place where such property was received, the marks or brands by which same is designated, if any, and, if not, then such other description as may best answer the purpose of indicating what the property is, and shall also state the probable value of the same, and to whom consigned; also the charges paid thereon, accompanied by the original receipt for such charges, if any, due and unpaid, and whether the whereabouts of the owner or consignee of such goods is known to affiant, and if so, whether notice was first given to him as hereinbefore provided; which affidavit shall be filed by said justice of the peace in his office, for the inspection of any one interested in the same, and he shall also enter in his estray book a statement of the contents of the affidavit, and the time and place where and by whom the same was made." Chapter 107, Acts Twenty-sixth General Assembly: "That if any personal property shall for three months remain in possession, unclaimed, by any of the persons named in the preceding section, with the just and legal charges unpaid thereon, including car service, the person having charge of same *may,* in case the whereabouts of the owner or consignee is not known, go before the nearest justice of the peace and make affidavit, stating the time and place where such property was received, the marks or brands by which same is designated, if any, and if not, then such other description as may best answer the purposes of indicating what the property is, and shall state the probable value of the same, to whom consigned, also the charges paid thereon, accompanied by a copy of the original receipt for such charges, and a copy of the bill of lading, if one was issued, also the other charges, if any due and unpaid, and that the whereabouts of the owner or consignee of such goods is not known to affiant; which affidavit shall be filed by such justice of the peace in his office for the inspection of any person interested in the same, and he shall also enter in his

estray book a statement of the contents of the affidavit, and the time and place, where, and by whom the same was made. In case the whereabouts of the owner or consignee is known, the person having the property above mentioned in possession shall, before the expiration of three months from receipt of goods, give notice to such owner or consignee of said fact, and shall also make an affidavit to same, together with description of property, before a justice of the peace, and the justice shall make a statement of contents of the affidavit in estray book. In either case above mentioned the justice shall order the property sold as provided in the next section." The court, as we have said, applied the terms of the original section in its charge; stating to the jury the rights of defendant with relation to selling the property if it was left unclaimed for a period of six months. We cannot see how defendant was in any way prejudiced by the time it was to remain being fixed at six, instead of three, months, as provided in the amendment; for it is conceded here that the property was left with the defendant for about fourteen months.

Complaint is made of other differences in the statute. It is said that the substitution of the word "may" in the amendment for the word "shall" in the original, is important. We have italicized the words referred to in the statutes set out. The argument is that the first statute was imperative, and the other merely directory. In our opinion, both statutes are in a sense directory,, and in another sense both are mandatory. The warehouseman is not obliged to take any steps towards selling the goods, but, if he does, it is imperative that he observe the stated requirements. To say that he could make affidavit or not, as he might see fit, is to say that this provision of the law is useless; for this was a privilege he would possess in the absence of any law on the subject. The procedure set out in the amendment is not a privilege, but a duty, of the warehouseman, in case he undertakes to sell the stored prop-

erty. Again, it is urged that under the amendment the notice to the owner had to be given, in every case, before the expiration of three months from the receipt of the goods. This, we think, is not so. . We must look to the spirit as well as the literal reading of the statute. The amendment, in terms, related to cases where a sale is sought to be had at the expiration of the first three-months period; but it is evident that if the goods are kept for a longer time this right is not lost. The notice to the owner must be given before the sale. If this is done, the statute is complied with. It may be observed further, in this connection, that defendant is responsible for the court's oversight, for he pleaded expressly a compliance with the terms of section 2178. His position now is that he was entitled to have the law correctly given by the court, even if he was mistaken in pleading the wrong statute. Had he done nothing to mislead the court, he might well claim that he was entitled to have the law correctly stated to the jury. But if he had asked an instruction embodying the terms of section 2178, he certainly could not complain if it were given; and practically that is the situation here.

, III. Section 2179 of the chapter we are considering provides for a certain notice to the owner if the property to be sold is worth less than one hundred dollars, and a different notice of it is of greater value; this value to be shown by the affidavit of the warehouseman. In the case at bar, affidavit was made that the value of the property was less than one hundred dollars, and notice was given accordingly. It was left to the jury to say whether the value of the goods exceeded one hundred dollars, and, if so, whether defendant knew this fact, or in the exercise of reasonable care should have known it. This was proper. So, too, we think the evidence justified the court in leaving to the jury to find whether the notices were posted according to law. The statute required that they be posted in five of the "most public places in the city." The places where these

notices were posted were not in dispute, but it was an open. question whether they were all public places, within the meaning of the law. We may say, also, without going into details, that the court properly left to the jury the question. of whether actual notice of the sale had been given plaintiff.

IV. The amount of the damages awarded is found. fault with. The jury fixed the value of the property at the time of the sale at seven hundred dollars. There is evidence to sustain this. The storage charges were found to be forty-two dollars and fifty-two cents, and this we think is correct. If the sale was invalid, no expense on that account could be taxed against plaintiff. But the court instructed that, if plaintiff was allowed a recovery, he was entitled to exemplary damages; and the verdict was for nine hundred dollars, which manifestly included two hundred dollars on this account. There is no specific claim in the petition for exemplary damages, though possibly it may be implied from the fact that the value of the property is. stated as one thousand dollars, and judgment is prayed for three thousand dollars. But neither malice, fraud, nor gross. negligence is alleged or proven; and these, or one of them, is ordinarily an essential ingredient of any such claim. *Johnson v. Railroad Co.,* 51 Iowa, 25; *Jones v. Marshall,* 56 Iowa, 739; *Williamson v. Stage Co.,* 24 Iowa, 171. There are, however, some cases in which exemplary damages are given by statute, as a necessary accompaniment of actual damages. Code, section 2418; *Thill v. Pohlman,* 76 Iowa, 638. The contention here is that exemplary damages are given by statute, and we look now to the provisions upon which reliance is had. Section 2172, Code 1873, prohibits a warehouseman issuing a receipt for any property not under his control at the time. Section 2173 provides for such property remaining in store. Section 2174 prohibits the issuance of a second receipt while the first is outstanding. Section 2175 is as follows: "No such person (warehouseman) shall sell or incumber, ship, transfer, or in any manner

remove beyond his immediate control, any personal property for which a receipt or voucher has been given as aforesaid, without the written consent of the person holding the same, except to enforce his lien for storage and warehouse charges, as provided for in this chapter." Section 2176 gives a right of action, to any person aggrieved by a violation "of any of the four sections next preceding," not only for actual damages, but said plaintiff "shall be entitled to exemplary damages which he may have sustained by reason of any such violation,, whether such person shall have been convicted under a criminal charge for the same act or not." In our opinion, section 2175 refers to a willful departure from duty by the warehouseman, and not to a mere failure, as here, to observe all legal requirements in attempting to enforce his rights. The last clause of section 2176, suggesting, as it does, that the violations referred to are acts of a criminal nature, makes quite clear the correctness of this construction; for in section 4088 the doing of each of the acts above mentioned as prohibited is made a felony. Exemplary damages should not have been allowed.

V. Complaint is made of the misconduct of plaintiff's counsel. We do not find any sufficient ground for reversal in the matters presented.

Plaintiff should remit two hundred dollars of his judgment, and pay the costs of this appeal. See *Keyser v. Railroad Co.*, 56 Iowa, 440. If plaintiff is willing to comply with this suggestion, the judgment will be *affirmed;* otherwise, it must stand REVERSED.

GRANGER, C. J., not sitting.