STATE OF CONNECTICUT *v.* PHILIP ADAMS

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 13—decision released September 12, 1978

*Alan E. Silver,* with whom, on the brief, were *Michael R. O'Connor* and *Stuart M. Ketaineck,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

LOISELLE, J. Following a jury trial, the defendant was convicted of assault in the first degree, in violation of General Statutes § 53a-59 (a) (3), and of risk of injury to a minor child, in violation of General Statutes § 53-21. On appeal to this court, the defendant challenges the court's rulings denying both his motion to suppress and his request for a mistrial.

The defendant's first claim is directed to the court's ruling admitting into evidence a sweatshirt obtained by the police from the defendant on the night of the assault. The surrounding facts, as revealed in the defendant's brief, are as follows: On June 23, 1975, the victim was discovered on a roadside in the town of Wallingford. He was subsequently taken to his home and then to the local police station. The defendant, a neighbor of the victim, was at home when the victim arrived at his own residence. The defendant and his wife followed the victim to the station.

Upon their arrival at the station, the defendant and his wife were asked downstairs, where both were given *Miranda* warnings. Because the defendant had been named as the assailant, he was asked to give his version of the events which had transpired earlier in the evening. Later, he alone was taken into the detective room, where he was again advised of the fact that he had been named as the assailant. Although *Miranda* warnings were not explicitly reiterated for the defendant, he was given a *Miranda* warning card which he was requested to

sign. He was then asked to turn over the sweatshirt he was wearing, which, after a pause, he agreed to do.

The state's version of the relevant events is as follows: Lieutenant Murt Howard, upon entering the detective division of the station, noticed red spots on the defendant's sweatshirt. The lieutenant was told that the defendant had already been advised of his rights, and the defendant revealed that he understood those rights. When asked about the spots on his shirt, the defendant replied that "it could be red paint" since he had been painting a bicycle at home. Upon further inquiry as to whether it could be blood, the defendant responded that this was possible, since he had cut himself while repairing the bike. Lieutenant Howard then asked the defendant if he would turn over the sweatshirt, advising the defendant that he had a right to refuse this. After some thought, the defendant agreed, stating that "I have been treated fairly here and I will give you the sweatshirt." Soon after, the defendant left the station, accompanied by his wife. He was not formally arrested for over a week, at which point he was arrested pursuant to a bench warrant issued by the Superior Court.

The defendant claims that the court's ruling admitting the sweatshirt into evidence violated his fifth amendment privilege against self-incrimination as well as his fourth amendment right to be secure against unreasonable searches and seizures. Because the privilege against self-incrimination serves only to protect "an accused . . . from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature," but does not extend to

protect a suspect from serving as the source for "real or physical evidence"; *Schmerber* v. *California,* 384 U.S. 757, 761, 764, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); the defendant's fifth amendment claim must fail. Consequently, the question narrows down to whether the mode by which the police obtained the defendant's sweatshirt violated fourth amendment strictures.

The fourth amendment to the United States constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." A specifically established exception to the warrant and probable cause requirements of this provision is that of a search conducted pursuant to consent. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The admissibility of evidence derived from a consensual search is contingent, however, upon proof by the state that consent was freely and voluntarily given and not the result of duress or coercion, express or implied. Id., 222, 248. In determining whether this standard is met, courts look to "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." Id., 226.

The defendant appears to predicate his claim that no consent was given upon the fact that he was the subject of a custodial interrogation and that such a circumstance is inherently coercive, vitiating the possibility of consent voluntarily and freely given. In *Schneckloth* v. *Bustamonte,* supra, the United States Supreme Court explicitly adopted a "totality of the circumstances" test for the determination of

voluntariness, bypassing a proposed "talismanic" test relied upon by a lower court. Notably, the court, remarking upon the finding in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), that custodial interrogations by the police were inherently coercive, expressly limited its holding to those searches which took place pursuant to consent given outside the custodial atmosphere. Subsequently, however, in *United States* v. *Watson,* 423 U.S. 411, 424, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976), the court, confronting the issue of the voluntariness of consent given by one arrested and within police custody—although not within the station house—noted that "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." See also *United States* v. *Frazier,* 560 F.2d 884, 889 (8th Cir. 1977); *United States* v. *Wiener,* 534 F.2d 15, 17 (2d Cir. 1976); *United States* v. *Candella,* 469 F.2d 173, 175 (2d Cir. 1972). Consequently, whether the defendant is within police custody at the time consent is given is merely one factor to be considered in determining whether the consent was "voluntarily and freely given." The fact of custody may require more careful scrutiny; see *United States* v. *Wiener,* supra, 17; but it does not alone preclude the giving of voluntary consent.

Whether the defendant was technically in custody at the time he gave up his sweatshirt is not, then, determinative. Rather, the question of whether a consent to a search was in fact voluntary is a question of fact to be determined from the totality of all the relevant circumstances. The record before us substantiates the court's conclusion that the defendant's act in giving up his sweatshirt was voluntary, essentially the product of free, uncon-

strained choice. The defendant came to the station of his own accord, he was advised of his rights, he was told that he had been named as the assailant, the questions addressed to him with respect to his sweatshirt put him on notice that it could be used to implicate him, he was told that he need not comply with the request to hand over his sweatshirt, and, finally, he left the station, accompanied by his wife, at the close of the questioning. Furthermore, when asked at the trial whether he had voluntarily surrendered his shirt, the defendant conceded that he had. Under these circumstances, it would be difficult to say that the court erred in ruling that the defendant acted voluntarily in giving up his shirt.

The defendant's next claim pertains to the court's ruling denying his motion for a mistrial. The facts surrounding this claim are as follows: During the course of the defendant's cross-examination of Lieutenant Howard, the defendant asked, "Now, is there anything that you asked Mr. Adams to do, sign a statement, sign the consent to the lie detector, signing the consent to have his picture taken, letting you check his hands — is there anything he refused to do?" The lieutenant responded, "No, sir, he was cooperative. I asked him — he had made a statement to me he had been in trouble in the state of Maine when he was fifteen years of age, and the problem itself was sodomy and assault —" The defendant objected to the answer as unresponsive, the court sustained the objection, and the state explicitly did not claim the answer. The defendant continued his line of questioning. Subsequently, after the conclusion of this cross-examination, the defendant moved for a mistrial based upon the prejudicial nature of the lieutenant's remark. The court denied the motion after argument, but offered

to submit a curative charge to the jury. Both parties agreed to this arrangement without objection and curative instructions were given.

For the first time on appeal, the defendant seeks to bulwark his claim that a mistrial was warranted by pointing out additional possibly prejudicial remarks which came out later in the trial when the defendant was being questioned on cross-examination.[1] The transcript reveals that the defendant failed to interpose the ground for objection he now asserts. Rather, he claimed that the questions raised by the state were repetitive. "Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted." *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 3 A.2d 224 (1938); *State* v. *Rado*, 172

---

[1] "[By Mr. Kelly:]

Q. Have you ever asked any minor child — and this is going beyond any members of your family, or where you might be doing diaper changing — to take down his or her pants, or take off his or her clothing?

A. I had not.

Q. You are sure of that?

A. I am positive of that.

Q. I have been asking you questions for a period of time. Again, do you recall the name 'Penny' — Mr. Silver: I object to this. This has been asked four or five times. Mr. Kelly: This is the second time I asked it.

By Mr. Kelly:

Q. Penny Saunders?

The Court: I will allow it.

The Witness: I do not.

By Mr. Kelly:

Q. You do not recall that name?

A. I do not.

Q. It means absolutely nothing to you?

A. Nothing whatsoever.

Q. You never heard the name?

Mr. Silver: I object, your Honor. He has asked that time and time again.

The Court: It's been answered."

Conn. 74, 81, 372 A.2d 159 (1976); *State v. Johnson,* 166 Conn. 439, 444–45, 352 A.2d 294 (1974); *Salvatore v. Hayden,* 144 Conn. 437, 443, 133 A.2d 622 (1957). An exception to this rule permits a claim to be raised for the first time on appeal where it involves the defendant's constitutional right to a fair trial. *Malley v. Manson,* 547 F.2d 25, 28 (2d Cir. 1976), cert. denied, 430 U.S. 918, 97 S. Ct. 1335, 51 L. Ed. 2d 598 (1977); see also *State v. Hauck,* 172 Conn. 140, 148, 374 A.2d 150 (1976); *State v. Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1974). Given the context in which the state's line of questioning was pursued and the fact that the defendant's answers foreclosed further inquiry, we cannot say that this line of questioning deprived the defendant of a fair trial. Furthermore, this episode came after the defendant's motion for a mistrial was ruled upon. The defendant failed to move again for a mistrial. Consequently, this particular interchange cannot logically provide any grounds for a claim that the court erred in denying the defendant's sole motion for a mistrial. It defies logic to require the court to rule upon a motion on the basis of evidence not yet admitted or questions not yet asked.

The question of whether the court erred in denying the defendant's motion for a mistrial must, then, focus solely upon the remark divulged by Lieutenant Howard upon cross-examination by the defendant. As stated in *State v. Paluga,* 171 Conn. 586, 599, 370 A.2d 1049 (1976), citing *State v. Grayton,* 163 Conn. 104, 112, 302 A.2d 246 (1972), cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972), " 'The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair

trial. *Izzo* v. *Crowley*, 157 Conn. 561, 565, 254 A.2d 904; *Ferino* v. *Palmer*, 133 Conn. 463, 466, 52 A.2d 433.' 'The trial court has wide discretion in passing on motions for mistrial.' *State* v. *Savage*, 161 Conn. 445, 449, 290 A.2d 221." The question becomes, therefore, whether the officer's remark was so prejudicial as to prevent the defendant from obtaining a fair trial. We cannot say that the comments were of such magnitude. Although the answer was clearly unresponsive, and inappropriately suggestive, little of substance was revealed. Within the context of the full trial, the remark pales in significance. Twice the jury were told, in words calculated not to draw attention to the remark, that it was to be disregarded.[2] Under these circumstances, we cannot say that the court abused its discretion in denying the motion for a mistrial. See *State* v. *Rado*, 172 Conn. 74, 81, 372 A.2d 159 (1976).

There is no error.

In this opinion the other judges concurred.

---

[2] In charging the jury, the court included the following curative instruction:

"On occasion, too, certain evidence was offered here, and perhaps as it was offered you could perceive the nature of it, but when it was offered, the court entertained an objection to it, and it was excluded or stricken from the evidence. In such instance, you will disregard the question and not speculate as to what the answer might have been or, if the answer was given anyway, and you heard it, you will disregard that answer likewise in your deliberations, as when questions and answers are also expressly stricken from the record.

"So, for example, you may recall that Police Officer Howard, having been called as a witness by the state, when under cross-examination by the defendant, at one point in his testimony responded, in part, to a question concerning the defendant's cooperation with the police by relating that the defendant told him, Officer Howard, that the defendant had been in trouble in Maine as a juvenile, on a problem

described in terms of a criminal offense, although, as I recall, Officer Howard did not say that the defendant said that he was so charged or convicted.

"On the defendant's objection, the court again struck from the record so much of Officer Howard's answer as involved that statement of the defendant to him. I instructed you then that that part of Officer Howard's answer was excluded from evidence and to be disregarded by you, the jury, as not evidence, and so not to be considered in your deliberation upon the evidence properly before you, and that I would repeat and refresh your recollection upon that instruction in these my concluding remarks or instructions to you. That, of course, is just what I am doing, and, so, I repeat that that portion of Officer Howard's answer and testimony was excluded from the evidence available for your consideration and that you must disregard it in your deliberation and determination."