STATE OF CONNECTICUT *v.* COLLIN BAKER

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued May 13—decision released August 12, 1980

*Suzanne Z. Gottlieb,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Robert J. O'Brien,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Guy W. Wolf III,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted after a jury trial of burglary in the third degree in violation of General Statutes § 53a-103 and of larceny

in the first degree in violation of General Statutes § 53a-122 (a) (2) in connection with an unlawful entry in a building with intent to commit a crime therein and theft of personal property. He has appealed from the judgment rendered on the verdicts and raises four claims of error.

The jury could reasonably have found the following facts. The defendant entered the apartment of Margaret Russo on April 21, 1977, without her permission by prying open a window. Russo returned home at approximately 8 p.m. at which time she only caught a glimpse of the intruder's arm before he fled with several thousand dollars worth of personal articles which were not recovered. The police discovered the defendant's fingerprints on a black plastic coin bank which he had moved from the dining room to the bedroom during the burglary. The latent fingerprints found at the scene of the crime were identical to fingerprints of the defendant on file at the New Haven police department. Russo did not know the defendant and did not authorize him to remove any articles from her home. On June 7, 1978, the day before the trial began, the defendant submitted to fingerprinting. These prints also establish that the defendant, Baker, touched the plastic bank.

Baker testified and alleged that he accepted the invitation of an acquaintance, Dwight Willoughby, to cut through several backyards to a house which Willoughby identified as his girlfriend's but which in reality belonged to Russo. There, Willoughby asked the defendant to wait by the back door because his girlfriend did not like unanticipated visitors. Willoughby entered the house from another side and later opened the back door from

the inside, wearing gloves, and told Baker to come in. When the defendant entered and followed Willoughby into the bedroom he saw that the drawers had already been pulled from the dresser. Willoughby then handed him a black plastic coin bank, at which point the defendant first realized what was happening and immediately left the house, taking nothing with him. Willoughby testified and denied the defendant's entire story.

## I

The defendant argues for the first time on appeal that he was denied a fair trial because a state's witness improperly brought to the jury's attention the implication that the defendant had been previously involved in criminal activities. To establish that the defendant committed the crime in question the state introduced and compared three separate sets of fingerprints: those obtained from the plastic bank at the scene of the crime, the defendant's prints obtained the day before trial and a copy of the defendant's fingerprints taken by Officer John Lehr of the New Haven police department on August 11, 1976, and preserved on a card in a police department file. The state offered Lehr's testimony to lay the foundation for the admission of the fingerprint card dated August 11, 1976. After several preliminary questions Lehr testified concerning his responsibilities and duties on August 11, 1976, and stated "[i]n police nomenclature, I was the doorman at the detention facility."

Although the response given could be construed to have created some prejudice in the minds of the jurors, the question posed did not contemplate such a response. The witness could have answered, and indeed a more likely response to the question would

have been, that it was his responsibility to take fingerprints. As soon as the statement was uttered the jury was excused. The defendant, however, at no time moved to strike the answer on which he bases this claim of error, nor did he request that the court give the jury any cautionary instructions concerning that answer. Moreover, the defendant's trial counsel at no time moved for a mistrial on grounds of undue jury prejudice or the court's failure either to strike the answer or to give a premonitary instruction to the jury.[1]

Only the most exceptional circumstances will save a claim, constitutional or otherwise, from the fatal consequences of a defendant's failure to make a timely objection. *State* v. *Briggs,* 179 Conn. 328, 332, 426 A.2d 298, cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862; *State* v. *Rogers,* 177 Conn. 379, 418 A.2d 50; *State* v. *Adams,* 176 Conn. 138, 406 A.2d 1; *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576. The policy behind this rule is both ancient and sound and "does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442; *State* v. *Evans,* supra, 66; *State* v. *Tuller,* 34 Conn. 280, 295. The defendant tries to equate this claim of error with the recognized exception "where the record adequately supports

---

[1] The defense counsel did object in an extensive colloquy to the prejudicial impact which he claimed the "detention facility" remark had in combination with the August 11, 1976 fingerprint card but those remarks were clearly made in an effort to exclude the entire fingerprint card.

a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State v. Evans,* supra, 70. In the circumstances of this case he cannot now complain of the lack of a cautionary instruction. The remark he complains of revealed nothing of substance. The jury only heard Officer Lehr give his job title without any reference to the defendant or any prior crime for which the defendant may have been charged. Compare *State* v. *Adams,* supra.

On the present record before us the defendant's counsel may well have made a strategic decision that any further reference to Lehr's remark might have emphasized testimony which left no impact on the jury or which only obscurely hinted to the jury that the defendant may have been involved in prior criminal behavior. See, e.g., *United States* v. *Carter,* 448 F.2d 1245 (8th Cir.), cert. denied, 405 U.S. 929, 92 S. Ct. 981, 30 L. Ed. 2d 802; *State* v. *DeFreitas,* 179 Conn. 431, 459 n.14, 426 A.2d 799. The record here does not support the defendant's claim that Lehr's answer clearly deprived him of a fair trial.

## II

The defendant also alleges denial of a fair trial due to prosecutorial misconduct in soliciting the testimony of Lehr in order to lay a foundation for and the admission of the August 11, 1976 fingerprint card. He argues that misconduct was committed on the ground that Lehr was an unnecessary witness, that the state had knowledge that his testimony would be prejudicial to the defendant and that the August 11, 1976 fingerprint card was merely cumulative because post-arrest fingerprints were available to identify the defendant.

A prosecutor must make "patent fairness and impartiality" the foundation of official conduct; *State* v. *Jones,* 180 Conn. 443, 458, 429 A.2d 936 (*Cotter, C. J.,* dissenting) ; and place justice for the guilty as well as the innocent before seeking convictions. *State* v. *Jones,* supra; *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219. " 'A state's attorney should scrupulously avoid questions of probable impropriety.' " *State* v. *Piskorski,* 177 Conn. 677, 719, 419 A.2d 866; *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186. A demonstrated deliberate effort by a prosecutor to influence the jury against the defendant through the attempted introduction of obviously inadmissible evidence may entitle the defendant to a new trial. *United States* v. *Woods,* 486 F.2d 172 (8th Cir.) ; *State* v. *Hafner,* 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74.

The defendant concedes the relevance of the fingerprint evidence but argues that its prejudicial effect, in light of Lehr's testimony that he, while a doorman at the detention facility, rolled those fingerprints, outweighed its probative value to such an extent that the card was obviously inadmissible when offered by the prosecutor. Evidence is admissible when it tends to establish a fact in issue or corroborate other direct evidence in the case. *State* v. *Crowe,* 174 Conn. 129, 384 A.2d 340. In *State* v. *Ralls,* 167 Conn. 408, 356 A.2d 147, this court recognized that "[i]n this age and particularly in these times it is a matter of common knowledge that fingerprinting is used in numerous branches of civil service and is not itself a badge of crime." Id., 418. For this reason, there cannot be an automatic rule regarding the admissibility of such evi-

dence. When, in the exercise of judicial discretion, a trial court determines that the probative value of the fingerprint card outweighs its prejudicial effect, the evidence may be admitted; *State* v. *DeFreitas,* 179 Conn. 431, 426 A.2d 799; *State* v. *Turcio,* 178 Conn. 116, 422 A.2d 749; *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219; so that the fact that the trial court in this case admitted the fingerprint card over the objection of the defendant is powerful evidence of its probativity.[2] Evidence which tends to indicate prior misconduct by the defendant may be admitted if it is substantially relevant for some purpose other than to show the probability that the defendant committed the crime for which he is on trial because he is a man of criminal tendencies. *United States* v. *Bradwell,* 388 F.2d 619 (2d Cir.), cert. denied, 393 U.S. 867, 89 S. Ct. 152, 21 L. Ed. 2d 135. Reliability is the linchpin in determining the admissibility of identification evidence and that determination depends on the "totality of the circumstances." See *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140. In light of our decision in *State* v. *Ralls,* supra, in which it was held that redacted fingerprint cards are not necessarily inadmissible, we cannot say that the fingerprint card in this case was obviously inadmissible when offered by the state. In addition, on the basis of the record before us, and taking into considera-

---

[2] In the present case the trial court ruled that the August 11, 1976 copy of the fingerprint card was admissible. The defendant properly preserved objections to admitting the copy of that card at trial; on appeal, however, he has not pursued the claim made at trial but has submerged that objection into a claim of prosecutorial misconduct. We, therefore, do not review the trial court's evidentiary ruling. *State* v. *Festo,* 181 Conn. 254, 255–56, 435 A.2d 38; *State* v. *Hoffler,* 174 Conn. 452, 457, 389 A.2d 1257; *State* v. *McLaughlin,* 132 Conn. 325, 339, 44 A.2d 116.

tion the failure of the defendant to request cautionary instructions regarding the fingerprint card; *Malley* v. *Manson,* 547 F.2d 25 (2d Cir.), cert. denied, 430 U.S. 918, 97 S. Ct. 1335, 51 L. Ed. 2d 598; we cannot conclude that the prejudice resulting from the admission of the August 11, 1976 fingerprint card was of such magnitude as to deny the defendant a fair trial.

## III

### A

The value of the stolen articles was testified to by Russo, the victim-owner. The defendant claims that before she testified the trial court should have required her to demonstrate her knowledge of the particular values at issue. The trial court exercises judicial discretion in deciding, under the particular circumstances of the case before it, whether to admit a witness' testimony of the value of her property. *Coffin* v. *Laskau,* 89 Conn. 325, 329–30, 94 A. 370. Our cases have ruled that the competence of the witness to testify to the value of property may be established by demonstrating that the witness owns the property in question. *Misisco* v. *LaMaita,* 150 Conn. 680, 684–85, 192 A.2d 891; *Anderson* v. *Zweigbaum,* 150 Conn. 478, 483n, 191 A.2d 133; *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 479–80, 58 A.2d 387; *Lovejoy* v. *Darien,* 131 Conn. 533, 536, 41 A.2d 98. The rule establishing an owner's competence to testify reflects both the difficulty of producing other witnesses having any knowledge upon which to base an opinion especially where the stolen items are never recovered; see *Jeffries* v. *Snyder,* 110 Iowa 359, 362, 81 N.W. 678; and the common experience that an owner is familiar with her property and knows what it is worth.

*Casada* v. *Hamby Excavating Co.,* 575 S.W.2d 851, 854 (Mo. App.). This rule is applicable in criminal as well as civil cases. *Moore* v. *United States,* 388 A.2d 889 (D.C.); *Platt* v. *State,* 291 So. 2d 96 (Fla. App.), writ discharged, 313 So. 2d 715; *State* v. *Smith,* 209 Kan. 664, 498 P.2d 78; *Mercer* v. *State,* 237 Md. 479, 206 A.2d 797; *State* v. *Hammond,* 6 Wash. App. 459, 493 P.2d 1249; annot., 37 A.L.R.2d 967, 1000.

The trial court granted the defendant a voir dire in the absence of the jury before Russo's testimony was offered, and he did not accept the opportunity at that time or on cross-examination at trial to attack her qualifications or competency to testify. On the record before us we cannot conclude that Russo, in fact, lacked knowledge of the particular value at issue. See 3 Wigmore, Evidence (Chadbourn Ed. 1970) § 716.[3] Compare *Beasley* v. *State,* 305 So. 2d 285 (Fla. App.), cert. denied, 315 So. 2d 180; *Barber* v. *State,* 23 Md. App. 655, 329 A.2d 760. In the circumstances of this case we consider the underlying principle "that if any reasonable qualifications can be established, the objection goes to the weight rather than the admissibility of the evidence." *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600. Accordingly, the trial court did not err in admitting Russo's testimony.

## B

In this state the degree of larceny and the severity of the punishment vary by statute according to

---

[3] We note that in the one instance where Russo admitted that she did not know the value of an item the trial court stopped her from answering questions as to its value and specifically barred her from repeating an appraiser's out-of-court statement as to its value. *Yonan Rug Service, Inc.* v. *United Services Automobile Assn.,* 69 A.2d 62, 64 (D.C.).

the value of the property stolen. General Statutes § 53a-122 provides: "(a) A person is guilty of larceny in the first degree when . . . (2) the value of the property or service exceeds two thousand dollars. (b) Larceny in the first degree is a class B felony." If the state did not offer sufficient evidence that the value of the articles taken by the defendant exceeded $2000 then a conviction for larceny in the first degree cannot stand. " 'When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt' . . . . Each essential element of the crime charged must be established by such proof . . . and although it is within the province of the jury to draw reasonable logical inferences from the facts proven, they may not resort to speculation and conjecture." *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102; *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38; *State* v. *Ballas,* 180 Conn. 662, 674, 433 A.2d 989.

The items taken during the burglary were never recovered and, therefore, were not physically entered in evidence. Russo, however, testified that $300 in cash was stolen along with two fur pieces purchased for $4200, six items of jewelry worth $4950 and four time pieces worth $1275.[4]

---

[4] Russo testified to the following values for the stolen items: (1) a diamond dinner ring, $800; (2) a gold sapphire ring with a diamond, $250; (3) a jade ring, $200; (4) a grandmother ring, $500. (According to the complainant the grandmother ring contained the birthstones of all her grandchildren as well as her own birthstone.); (5) a big antique watch, $75; (6) a $20 gold piece

Whether an owner's testimony as to the current market value provides sufficient information to support a jury verdict depends on the circumstances of each case. *Moore v. United States,* 388 A.2d 889, 891n (D.C.). In the present case the only items which the victim referred to exclusively by purchase price were the furs. An owner's testimony of value by reference to purchase price may be insufficient if the property is of a sort subject to prompt depreciation or obsolescence. See *Moore v. United States,* supra, 891. Even if we were to regard the furs as items subject to prompt depreciation, and thus as possibly of a negligible market value, the complainant's testimony that the value of the remaining items exceeded $6000 nevertheless would provide ample evidence for reasonable jurors to be convinced beyond a reasonable doubt that the market value of the stolen property exceeds $2000. *In the Matter of R.D.J.,* 348 A.2d 301 (D.C. App.); *Vickers v. State,* 303 So. 2d 700 (Fla. App.), cert. denied, 315 So. 2d 187; *Jewell v. State,* 216 Md. 110, 139 A.2d 707; *Commonwealth v. Warlow,* 237 Pa. Super. Ct. 120, 346 A.2d 826; *State v. Hammond,* 6 Wash. App. 459, 493 P.2d 1249.[5]

---

medallion with a heavy chain, $500; (7) a gold watch with diamonds, $300; (8) a gold watch, $400; (9) a charm bracelet, $1200; (10) a diamond ring with emeralds, $2000. The only testimony regarding the value of a mink coat and a mink stole was their purchase price ($3500 and $700 respectively) at some unspecified date—several years ago.

[5] *Commonwealth v. Warlow,* 237 Pa. Super. Ct. 120, 346 A.2d 826, and *State v. Hammond,* 6 Wash. App. 459, 493 P.2d 1249, were decided under a statute similar to Connecticut's. Wash. Rev. Code Ann. § 9A.56.010 (12) superseding Wash. Rev. Code Ann. § 9.54-100 as of July 1, 1976; 18 Pa. Cons. Stat. Ann. § 3903 (c) (Purdon) cited in *Warlow.*

## IV

Finally, the defendant claims error in the court's failure to include the statutory definition of "value"; General Statutes § 53a-121;[6] in its charge to the jury on larceny in the first degree and in the omission of a specific instruction that larceny in the first degree required proof beyond a reasonable doubt that the value of the stolen property exceeded $2000. The defendant's trial counsel did not request any such instruction or take an exception to the charge as given on these grounds. The court instructed the jury that in order to convict the defendant of the crime of larceny in the first degree they must find that the value of the stolen property exceeded $2000. The trial court also charged the jury that the state was required to prove "every element constituting the offenses charged beyond a reasonable doubt." The court specifically instructed the jury on two occasions that a larceny conviction required the state to prove its case beyond a reasonable doubt. In the charge the court repeated on at least thirty instances that the elements of the offenses charged must be established beyond a reasonable doubt. When no exception is taken to a jury charge, this court will find error only if the charge as given deprived the defendant of a fundamental right or a fair trial. *State* v. *Griffin*, 175

[6] General Statutes § 53a-121 provides: "(a) For the purposes of this part, the value of property or service shall be ascertained as follows: (1) Except as otherwise specific in this section, value means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or service within a reasonable time after the crime. . . . (3) When the value of property or service cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value shall be deemed to be an amount less than fifty dollars."

Conn. 155, 397 A.2d 89; *State* v. *Reardon,* 172 Conn. 593, 602, 376 A.2d 65. In evaluating such claims, we apply the well-established rule that individual instructions are not to be judged in artificial isolation from the overall charge. See *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866; *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391; *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147. The portion of the charge concerning larceny in the first degree when viewed in its proper perspective as part of the overall charge could not have reasonably misled the jury. *State* v. *Rose,* 169 Conn. 683, 688, 363 A.2d 1077.

There is no error.

In this opinion PETERS, HEALEY and PARSKEY, Js., concurred.

BOGDANSKI, J. (dissenting). The defendant claims that the court erred in failing to define the term "value" pursuant to § 53a-121 of the General Statutes when charging the jury as to the crime of larceny in the first degree.

While the court did instruct the jury that in order to convict the defendant of first degree larceny they had to find that the value of the property was in excess of $2000, it failed to instruct them as to what standard of proof § 53a-121 mandates and what the consequences are of the finding that that mandate has not been met. The effect of this was to remove from the jury's consideration an essential element of the crime of first degree larceny.

Section 53a-121 provides: "the value of property *shall* be ascertained as follows: (1) . . . , value means the market value of the property . . . at the

time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime . . . . When the value of property . . . cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value *shall* be deemed to be an amount less than fifty dollars." (Emphasis added.)

The absence of any instructions as to value as set forth in the statute leads to the conclusion that the jury engaged in pure speculation.

I would find error and order a new trial.