■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GRACE WOMBLE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Lakritz, J.), rendered March 17, 1983, convicting her of grand larceny in the second degree and fraudulent accosting, upon a jury verdict, and sentencing her to an indeterminate sentence of 1½ to 4½ years' imprisonment and a concurrent definite sentence of one year.

Judgment modified, on the law and as a matter of discretion in the interest of justice, by reducing the conviction of grand larceny in the second degree to one of petit larceny, and vacating the sentence imposed thereon. As so modified, judgment affirmed.

In order to convict defendant of the crime of grand larceny in the second degree it was incumbent upon the People to prove beyond a reasonable doubt that the value of the stolen property exceeded $1,500 (Penal Law § 155.35). The term "value" is defined in Penal Law § 155.20 (1) as: "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime".

In our view, the People have not met their burden on the issue of value.

We have no quarrel with the key principle set forth by the dissent, i.e., that an owner is competent to testify as to the value of his or her jewelry in a criminal prosecution (State v Baker, 182 Conn 52, 437 A2d 843, 848; State v Hammond, 6 Wn App 459, 493 P2d 1249). As the court held in State v Hammond (supra, at p 461, p 1251): "the general rule requiring that a proper foundation be laid, showing the witness to have knowledge upon the subject before he can qualify to testify as to market value, does not apply to a party who is testifying to the value of property which he owns. The owner of property is presumed to be familiar with its value by reason of inquiries, comparisons, purchases and sales. The weight of such testimony is another question and may be affected by disclosures made upon cross-examination as to the basis for such knowledge, but this will not disqualify the owner as a witness". In this regard the owner's testimony regarding the purchase price of the property may be probative on the issue of value so long as the property is of the sort not "subject to prompt depreciation or obsolescence", e.g., jewelry (State v Baker, supra, p 63, p 849). However, these principles

cannot be utilized in the case at bar to sustain defendant's conviction of grand larceny in the second degree.

It is well settled that "[w]here the owner repeats particular out-of-court statements by an expert for their truth or purports to give the expert's view, he improperly uses hearsay evidence. The owner's opinion in such cases is inadmissible because it introduces expert testimony without producing the expert" (*Hartford Acc. & Indem. Co. v Dikomey Mfg. Jewelers,* 409 A2d 1076, 1080 [DC App]; *see also, State v Baker, supra; Yonan Rug Serv. v United Servs. Auto. Assn.,* 69 A2d 62 [DC App]). Indeed, in *State v Baker* (*supra*), the Supreme Court of Connecticut specifically approved a ruling of a trial court which barred the victim from repeating an appraiser's out-of-court statement as to the value of stolen property. In the case at bar, the victim, on her direct testimony, simply repeated the particular values ascribed to her jewelry by an appraiser in a report prepared in 1979.

The record indicates that the People initially asked the victim "what was the approximate value of the jewelry?" In response to defense counsel's objection, which was sustained, the People advised the court at a sidebar conference that the victim was "competent to testify to her opinion as to her property's value" based on "the prices she may have paid for it". At that point, the court correctly reminded the People of the prior testimony in the trial which indicated that the items of stolen jewelry were either won by the victim's husband or were gifts. The court thereupon advised the prosecutor that (1) under the circumstances, the purchase price could not serve as the basis of any testimony by the victim as to the value of the stolen property and (2) if he (the prosecutor) wanted to "qualify it in some way, that's something else". The prosecutor indicated that he understood the court's ruling, and shortly thereafter, during direct examination of the victim, elicited the improper hearsay testimony as to the value of the stolen jewelry. The following excerpt from the victim's direct testimony is illustrative on this point:

"Q What was the value of the jewelry that you had on your person that was given by you to defendant?

"A In 1979, the ring was appraised for 23 — the engagement ring was appraised for 2300. The marriage band was appraised for 400. The gold watch was appraised for $1,000 and the pendent was appraised for approximately the same as the engagement ring.

"Q Where did you have this jewelry appraised?

"A Miami Beach, Florida.

"Q And do you remember where you had it appraised?

"A Yes, I have the appraisal with me".

This testimony, elicited by the People on direct examination of the victim, was hearsay and was erroneously admitted into evidence (*Hartford Acc. & Indem. Co. v Dikomey Mfg. Jewelers, supra; State v Baker, supra; People v Bunn,* 63 AD2d 1031).

As no other evidence of value of the stolen property was adduced, the People failed to meet their burden of proving every element of the crime of grand larceny in the second degree beyond a reasonable doubt. However, the evidence presented did establish the crime of petit larceny, which requires no proof of value, and we have modified the judgment accordingly (*People v Cahill,* 83 AD2d 589).

There is no need to remit for resentencing since defendant has already served the maximum time to which she could have been sentenced on the petit larceny conviction (*People v Cahill, supra; People v Bell,* 55 AD2d 624).

Finally, no reversible error was committed by the denial of defendant's *Sandoval* motion. Defendant moved to preclude the prosecution from cross-examining her as to her prior misdemeanor convictions. Specifically, defendant argued that she would be prejudiced by such cross-examination since the underlying facts of those convictions were similar to those at bar. Criminal Term denied defendant's motion. It has been consistently held that the trial court is accorded broad discretion in its assessment of the probative value of evidence of prior convictions and the potential prejudice to the defendant resulting from the admission of this evidence (*see, People v Sandoval,* 34 NY2d 371; *People v Pavao,* 59 NY2d 282; *People v Hall,* 99 AD2d 843).

Although, under the circumstances, Criminal Term should have limited the prosecutor's inquiry to some degree, the record indicates that the prosecutor voluntarily restricted his inquiry on cross-examination to 4 of the 8 prior convictions and did not inquire into the underlying facts of those convictions. Rather, his inquiry was restricted to impeachment of the defendant's credibility by showing she could not remember the dates of her convictions but could remember what occurred on what she claimed was an uneventful day during which the crimes occurred. Consequently, the failure of the court to so restrict his inquiry may be considered harmless error. Mangano, Gibbons and O'Connor, JJ., concur.

Titone, J. P., dissents and votes to affirm the judgment, with the following memorandum: Defendant has been convicted of grand larceny in the second degree and fraudulent accosting in connection with her participation in a confidence scheme. At

trial, the victim testified that the stolen property, consisting of diamonds and gold jewelry, which were never recovered, was worth a total of $6,000, far above the floor of and in excess of $1,500 set for grand larceny in the second degree (Penal Law § 155.35). The majority, finding this proof insufficient, modifies the judgment by reducing the conviction to petit larceny. I respectfully dissent.

It is ancient and universal learning that the owner of an article is competent to estimate its worth "whether he is generally familiar with such values or not" (3 Wigmore, Evidence § 716, at 56 [Chadbourn rev 1970]; *see also, Admissibility of Opinion of Nonexpert Owner as to Value of Chattel,* Ann., 37 ALR2d 967), a rule consistently followed by the courts of this State (*see, e.g., People v Gaul,* 22 AD2d 805 [cited in 3 Wigmore, *op. cit.,* § 716, n 2, at 57]; *Glazer v Quittman,* 84 Misc 2d 561). As put by the Connecticut Supreme Court, "The rule establishing an owner's competence to testify reflects both the difficulty of producing other witnesses having any knowledge upon which to base an opinion especially where the stolen items are never recovered * * * and the common experience that an owner is familiar with her property and knows what it is worth" (*State v Baker,* 182 Conn 52, 60, 437 A2d 843, 848). On this basis, the decisions almost uniformly hold that a nonexpert owner may testify as to the value of his or her jewelry in a criminal prosecution (*State v Baker, supra; State v Giles,* 68 Ohio Opns 2d 142, 322 NE2d 362; *State v Hammond,* 6 Wn App 459, 462, n 2, 493 P2d 1249, 1251 [citing cases]; Ann., *op. cit.,* 37 ALR2d 967, 1033, § 43; *cf. People v Liquori,* 24 AD2d 456).*

Quite distinguishable, of course, is *People v Harold* (22 NY2d 443), involving a stolen water pump. In attempting to install the pump, the pump had been " 'nicked' ", its copper tubing bent, and the gauge " 'pushed up' " by the owner (*People v Harold, supra,* at p 444). The only proof as to value — "especially significant" due to the fact that the dividing line between grand larceny, second degree, and petit larceny was $100 at the time — was the $124 purchase price, which failed to take into account the pump's condition when it was taken and the fact that it was

---

* There is a 1891 New York case which seemingly requires that an owner be a qualified expert before he or she may testify as to value (*Gregory v Fichtner,* 27 Abb NC 86). That holding is plainly inconsistent with more modern appellate authority (*e.g., People v Carter,* 19 NY2d 967; *People v Gaul,* 22 AD2d 805) and the same court which decided *Gregory* limited its holding on the basis that it "was a border case, and its authority is not to be extended a hair's breadth beyond the precise predicament of fact there presented" (*Hay v Muller,* 7 Misc 670, 673). *Gregory v Fichtner (supra)* has not been followed in New York in over 50 years.

no longer new, factors "greatly affect[ing]" its value (*People v Harold, supra,* at p 445). "[B]ecause of the importance of the value of the pump in determining the offense and subsequent punishment", the Court of Appeals reversed and ordered a new trial (*People v Harold, supra,* at p 445).

*Harold* (*supra*) simply illustrates that testimony as to purchase price will not suffice if the property is of a sort that is subject to prompt depreciation or obsolescence (*State v Baker,* 182 Conn 52, 437 A2d 843, 849, *supra; Moore v United States,* 388 A2d 889, 891 [DC App]; *cf. People v Cahill,* 83 AD2d 589 [household goods; purchase price insufficient]; *People v Supino,* 64 AD2d 720 [automobile; purchase price sufficient]). It does not establish an inflexible rule requiring expert testimony in this type of case, a result which "would be intolerable" (*People v Colasanti,* 35 NY2d 434, 437).

Nor does the victim's testimony in this case constitute inadmissible hearsay (*see,* 3 Wigmore, Evidence § 719 [Chadbourn rev 1970]). An owner necessarily relies on inquiries, comparisons, appraisals, purchases and sales in forming notions as to value and it is settled that an owner's estimation predicated on such extrajudicial sources is not defective (*Hartford Acc. & Indem. Co. v Dikomey Mfg. Jewelers,* 409 A2d 1076 [DC App]; *State v Hammond,* 6 Wn App 459, 493 P2d 1249, 1251, *supra*). Such information received in part from others does not constitute inadmissible hearsay (3 Wigmore, *op. cit.,* § 719; *see, Lush v Druse,* 4 Wend 313 [admitting knowledge gained by inquiring at a merchant's office]; *Harrison v Glover,* 72 NY 451 [admitting knowledge based on price lists and letters from dealers], both cited by Professor Wigmore). "The weight of such testimony is another question and may be affected by disclosures made upon cross-examination as to the basis for such knowledge, but this will not disqualify the owner as a witness" (*State v Hammond,* 6 Wn App 459, 462, 493 P2d 1249, 1251, *supra*).

True, an owner cannot simply repeat a particular expert's statements made out of court. Such testimony is hearsay because it introduces expert testimony without producing the expert (*State v Baker,* 182 Conn 52, 61, n 3, 437 A2d 843, 848, *supra; Yonan Rug Serv. v United Servs. Auto. Assn.,* 69 A2d 62, 64 [DC App]). As indicated, however, an owner can give an estimate based " 'on expressions of value given to [her] by others' " such as out-of-court appraisals (*Hartford Acc. & Indem. Co. v Dikomey Mfg. Jewelers,* 409 A2d 1076, 1081, *supra; see,* McCormick, Evidence § 10, at 25 [3d ed]).

In the present case, the victim was asked for *her* opinion as to the value of the jewelry. The record shows the following:

"Q Now * * * what was the approximate value of the jewelry that you gave to the defendant?

"MR. GRIZORIO [defense counsel]: Objection.

"THE COURT: Objection sustained.

"MR. KIRSCH [District Attorney]: Your Honor, may we approach?

"THE COURT: Sure * * *

"MR. KIRSCH: She is competent to testify to her opinion as to her property's value.

"THE COURT: Tell me on what basis?

"MR. KIRSCH: On the basis of the prices she may have paid for it.

"THE COURT: Her testimony was, one, one was a gift and the other was won by her husband, and the third was a gift.

"I don't mind your showing something if you can to indicate her ability to give a value, but not based upon the question which you just asked.

"However, you want to qualify it in some way, that's something else.

"MR. KIRSCH: Okay, I understand that * * *

"Q * * * [D]id you ever do anything to attempt to ascertain the value of the jewelry that you had on your person on July 20, 1982, at some time prior to that date?

"A 1979, and I had it appraised.

"Q What was the value of the jewelry?

"MR. GRIZORIO: Objection.

"THE COURT: I'll permit it, Counsel. Your objection is overruled.

"MR. GRIZORIO: Exception.

"Q What was the value of the jewelry that you had on your person that was given by you to the defendant?

"A In 1979, the ring was appraised for 23 — the engagement ring was appraised for 2300. The marriage band was appraised for 400. The gold watch was appraised for $1,000 and the pendant was appraised for approximately the same as the engagement ring.

"Q Where did you have this jewelry appraised?

"A Miami Beach, Florida.

"Q And do you remember where you had it appraised?

"A Yes, I have the appraisal with me * * *

"Q Are you able to particularly describe the pendant?

"A Yes. It was that — for some reason that's not an appraisal, but I can describe it. It was a round —

"MR. GRIZORIO: I will object to that, your Honor, as not even on the appraisal that she just testified to.

"THE COURT: I will sustain the objection insofar as the appraisal is concerned, the reference to the appraisal.

"I will permit the witness to describe it."

Another "objection" was registered upon an application for a trial order of dismissal upon the ground that the People had failed to establish a value in excess of $1,500. The District Attorney claimed that he was being sandbagged, but the defense counsel refined the objection and urged that the testimony concerning the appraisal was "self-serving". Such an objection is not a hearsay objection, though self-serving evidence is often hearsay (Richardson, Evidence §§ 356-358 [Prince 10th ed]).

Thus, it is evident that defendant made no hearsay claim at trial and, indeed, makes no hearsay claim in her brief on appeal. Consequently, no question of law is presented for appellate review (*People v Nuccie,* 57 NY2d 818; *People v West,* 56 NY2d 662; Richardson, Evidence § 538 [Prince 10th ed]). I fail to perceive why the issue is injected into the case by the majority, *sua sponte,* in the interest of justice.

Interest of justice review should be exercised sparingly since it deprives the People of further appellate remedies (*see,* CPL 450.90 [2] [a]; *People v Hoke,* 62 NY2d 1022; *People v Fava,* 58 NY2d 807; *People v Dercole,* 52 NY2d 956). Moreover, interest of justice review is not warranted where the unprotested error did not deprive the defendant of a fair trial and could have been obviated by prompt protest (*People v Jones,* 81 AD2d 22; *cf. People v Hoke, supra*), precisely the case here. Had defense counsel made a pinpointed protest, the victim could have been instructed that she was not to indicate the appraisal value, but rather, as requested, to give her own opinion concerning the value, an opinion which she was plainly qualified to give.

In short, no injustice is perceived on the record before us. The victim was subject to full cross-examination and her testimony constituted ample proof to take the question of value to the jury. We should not disturb that determination on appeal (*State v Baker,* 182 Conn 52, 437 A2d 843, *supra; State v Giles,* 68 Ohio Opns 2d 142, 322 NE2d 362, *supra; State v Hammond,* 6 Wn App 459, 493 P2d 1249, *supra; cf. People v Supino,* 64 AD2d 720, *supra; People v Gaul,* 22 AD2d 805, *supra*).

There is no merit in the defendant's remaining contentions. In a period of four years, the defendant had been convicted of 10

crimes. She received conditional discharges, a probationary sentence and fines. In imposing sentence in this case, the trial court found "that it is now time to put a stop to * * * the criminal act[s] of this defendant for a certain period of time". I agree and cast my vote for affirmance.