STATE OF CONNECTICUT *v.* EDWARD DAVIS
(2785)

DUPONT, C.P.J., SPALLONE and DALY, Js.

Argued November 16, 1984—decision released March 12, 1985

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SPALLONE, J. After a jury trial, the defendant was found guilty of larceny in the first degree in violation of General Statutes (Rev. to 1979) § 53a-122 (a) (2). On appeal,[1] he claims that the trial court erred (1) in denying his motion to suppress testimony concerning items seen in his car during an investigatory stop, (2) in denying his motion for judgment of acquittal on the charge of larceny in the first degree and in failing to instruct the jury to consider only the charge of larceny in the fourth degree, and (3) in failing to instruct the jury that the state was required to prove every essential element of the offense beyond a reasonable doubt and in failing to instruct on the element of value.

The factual background of this case is as follows: On February 12, 1980, Lieutenant Richard Rollinson of the Woodbridge police department, acting upon two complaints of suspicious activity, stopped a motor vehicle driven by the defendant. The complaints indicated that a black man, driving a yellow car with a license plate reading JUEDON or JAUDON, had appeared at private homes in an affluent Woodbridge neighborhood and solicited painting or carpentry work. One complainant maintained that the man backed his vehicle up to the complainant's garage and attempted to open his front door. The complainants lived within one-half mile of each other and gave similar descriptions of the man, the vehicle, the license number and the work solicitation. The vehicle and the defendant matched those descriptions. By the time Rollinson stopped the vehicle, he had received a third complaint that an individual had "rattled the door" and solicited painting work. Rollinson knew when he made the stop that no solicitation permits, as required by local ordinance, had been issued by the town of Woodbridge within the past six

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

months. He also knew that the area in which the complainants lived was subject to a high incidence of burglaries.

Upon stopping the vehicle approximately one and one-half miles from the second complainant's residence, Rollinson asked the defendant for his license and registration. The defendant produced his driver's license but could not produce proper registration. In response to the officer's queries, the defendant explained that the owner of the car had recently received a new vanity plate, and that an expired registration certificate in the car related to the old license plate. During the ten minutes they spent discussing the registration, Rollinson noticed several pieces of stereo equipment and a rug partially covering some walnut cabinets in the back of the car. Rollinson asked if he could see the items, and the defendant responded that he could not without a warrant.

Rollinson then questioned the defendant about soliciting in the neighborhood and explained that a permit is required for house-to-house solicitation. The defendant stated that he did not have a solicitation permit and that he was unemployed and looking for work. Rollinson told him that there had been numerous burglaries in the area and again requested permission to look at the items in the car. At this point, the defendant readily agreed and assisted Rollinson by getting out of the car and unlocking the back of the vehicle. In the car, in addition to the stereo equipment, the officer found an oriental-type rug, an ornate brass clock and two silver candlestick holders. Rollinson testified that he also saw what appeared to be a box of silverware. A second officer who was present noticed a wine cooler or wine holder. After Rollinson ran a computer check on several of the items with negative results, the defendant was allowed to leave. The entire stop lasted about twenty minutes.

That evening, a burglary was reported in the same neighborhood at the home of Louis Dupre. Among the items Dupre listed as missing were seven sets of sterling silver place settings, nine sets of silver-plated place settings, two silver candlestick holders, a silver-plated wine cooler, an oriental rug, an antique clock and some stereo equipment. Upon application and affidavit of Rollinson, an arrest warrant was issued, the defendant was arrested and charged with burglary in the third degree in violation of General Statutes § 53a-103 and with larceny in the first degree in violation of General Statutes (Rev. to 1979) § 53a-122. The defendant was convicted, on a substitute information, of larceny in the first degree.

I

The defendant first claims that the stop of his vehicle exceeded the permissible scope of an investigative stop in violation of the principles set forth in *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). He argues that because the stop was unjustifiably prolonged, any consent to the search which he may have given was invalid.

There is no question that the police may detain an individual for investigative purposes on less than probable cause to arrest or seize. *Adams* v. *Williams*, 407 U.S. 143, 145–46, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State* v. *Januszewski*, 182 Conn. 142, 147–48, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Such a stop may be the officer's most reasonable course of conduct where it is intended to maintain the status quo while obtaining more information. *State* v. *Januszewski*, supra, 150; *State* v. *McMullen*, 2 Conn. App. 537, 540, 480 A.2d 594 (1984). If the results of the initial stop confirm or arouse further suspicion in the officer's mind, the stop may be prolonged and its scope enlarged

as required by the circumstances. *State* v. *Carter,* 189 Conn. 611, 618, 458, A.2d 369 (1983); *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973).

In determining whether an investigative stop is reasonable, the circumstances surrounding the officer's actions must be assessed under an objective standard. *Scott* v. *United States,* 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978); *State* v. *Martin,* 2 Conn. App. 605, 612, 482 A.2d 70 (1984). Under the circumstances of this case, it would have been less than reasonable if Rollinson had not taken adequate time to establish the defendant's identity, to ascertain the ownership of the vehicle and the status of its registration, and to investigate the apparent violation of the local ordinance prohibiting the solicitation of work without a permit. Furthermore, having seen certain items in plain view in the back of the car, his request to search was not an unreasonable enlargement of the scope of the stop. *State* v. *Januszewski,* supra. Rollinson acted upon a reasonable and articulable suspicion, which, though insufficient to constitute probable cause for arrest, was based upon facts that, objectively viewed, provided sufficient reason to stop the defendant initially and to enlarge the scope of the stop thereafter.

The validity of the defendant's consent to the search must similarly be determined by viewing the totality of the circumstances. "A warrantless search is not unreasonable under either the fourth amendment to the constitution of the United States or article first, § 7, of the constitution of Connecticut if a person with authority to do so has freely consented to the search. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978). The state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so. *Bumper* v. *North*

*Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *Dotson* v. *Warden,* supra, 618–19." *State* v. *Jones,* 193 Conn. 70, 78–79, 475 A.2d 1087 (1984). "The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is 'a question of fact to be determined from the totality of all the circumstances.' *Schneckloth* v. *Bustamonte,* [412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)]. As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence. *State* v. *Hanna,* [150 Conn. 457, 471–72, 191 A.2d 124 (1963)]. Such conclusions must be upheld unless they are legally or logically inconsistent with the facts found or unless they involve application of an erroneous rule of law material to the case. *Velsmid* v. *Nelson,* 175 Conn. 221, 225, 397 A.2d 113 (1978); *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 323–24, 321 A.2d 456 (1973); *F. & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 510, 289 A.2d 905 (1971)." *Dotson* v. *Warden,* 175 Conn. 614, 619, 402 A.2d 790 (1978).

In this case, no force was used; the defendant was not in custody or under arrest and he showed no signs of being intoxicated or under the influence of drugs. See *State* v. *Reddick,* 189 Conn. 461, 470, 456 A.2d 1191 (1983). The totality of the circumstances in this situation encompasses the defendant's clear familiarity with the law which was evidenced when he initially refused Rollinson permission to inspect the back of the car because the officer had no warrant. The defendant's subsequent change of mind and assistance in the search, in the context of his awareness of his rights, support the trial court's finding of informed consent. The material difference between the testimony of the defendant and that of Rollinson as to the conditions surrounding his consent raised a question of credibil-

ity and fact within the province of the court. Id., 470 n.8. We hold that, on the basis of the facts before it, the trial court did not err in denying the defendant's motion to suppress.

II

The defendant's second claim on appeal is that the court erred in denying his motion for judgment of acquittal on the charge of larceny in the first degree[2] and in refusing to instruct the jury to consider only larceny in the fourth degree.[3] His argument focuses upon the value of the property he was convicted of taking.

The defendant argues that the judgment of conviction should be set aside because of the possibility that the jury based its verdict on evidence of value which was improperly before it. He first argues that the jury should not have been allowed to consider testimony concerning the value of items which were not proved to have been received by him, that is, the sterling and silver-plated place settings which were reported missing, but were not specifically seen in his car. The defendant claims that because the state failed to prove beyond a reasonable doubt that he ever possessed the flatware, the court impermissibly allowed the jury to base its verdict upon its value.

The defendant relies on *State* v. *Saracino,* 178 Conn. 416, 423 A.2d 102 (1979), in support of his claim. In *State* v. *Saracino,* supra, the only evidence introduced to prove the value of the stolen merchandise was testimony by a store manager who stated that merchandise valued at over $12,000 was found missing from

---

[2] At the time of the offense, General Statutes (Rev. to 1979) § 53a-122 provided in part: "(a) A person is guilty of larceny in the first degree when . . . (2) the value of the property or service exceeds two thousand dollars."

[3] At the time of the offense, General Statutes (Rev. to 1979) § 53a-125 provided in part: "(a) A person is guilty of larceny in the fourth degree when the value of the property or services is fifty dollars or less."

the store while the defendant was employed there. Id., 420. Although the jury could reasonably have found that the defendant received stolen property, the court held that the state had failed to sustain its burden as to the value of that property. Id., 419. In this case, almost all of the items reported missing were seen in the defendant's vehicle. Dupre testified that the place settings had been kept in boxes located in a dining room bureau. Rollinson had noticed "a box of some sort" in the car. Further, the dining room bureau was one of the areas from which other items seen in the defendant's vehicle had been taken, and the drawers of the bureau had been found open on the evening the items were discovered missing.

Under the circumstances, we find that the trial court did not abuse its discretion when it admitted testimony relating to the flatware even though the flatware was not specifically seen in the defendant's possession. Whether the jury, by inference, concluded that the defendant at some point possessed the flatware was a question of fact solely within their ambit. "[I]t is the jury's right to consider evidence, draw logical deductions and make reasonable inferences from facts proven. State v. Schoenbneelt, 171 Conn. 119, 126, 368 A.2d 117 (1976); Dacey v. Connecticut Bar Assn., 170 Conn. 520, 540, 368 A.2d 125 (1976). The jury decides questions of fact. Gaulton v. Reno Paint & Wallpaper Co., 177 Conn. 121, 127, 412 A.2d 311 (1979). It may accept or reject the testimony of any witness; Zarembski v. Three Lakes Park, Inc., 177 Conn. 603, 608, 419 A.2d 339 (1979); and determine the weight to be given the evidence. Angelica v. Fernandez, 174 Conn. 534, 535, 391 A.2d 167 (1978)." Eagar v. Barron, 2 Conn. App. 468, 471, 480 A.2d 576 (1984). We will not delve into the minds of the jurors in order to ascertain the basis and the rationale underlying their decision. Eagar v. Barron, supra, 472.

The defendant also claims that the court erred in allowing Dupre to testify as to the value of the missing items. The law in Connecticut is well settled as to the competency of the owner of property to testify as to its value. "Our cases have ruled that the competence of a witness to testify to the value of property may be established by demonstrating that the witness owns the property in question. . . . The rule establishing an owner's competence to testify reflects both the difficulty of producing other witnesses having any knowledge upon which to base an opinion especially where the stolen items are never recovered . . . and the common experience that an owner is familiar with her property and knows what it is worth. . . . This rule is applicable in criminal as well as civil cases." (Citations omitted.) *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980); *State* v. *Gabriel,* 192 Conn. 405, 424, 473 A.2d 300 (1984).

The defendant contends that Dupre's testimony as to the value of the items was improper because it was in large part based on information obtained from other sources. It is difficult, however, to conceive of an owner having an innate concept of value simply by virtue of ownership. An owner must of necessity rely on other sources for his knowledge of value. Thus, "[t]he *owner of an article,* whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy." (Emphasis in original.) 3 Wigmore, Evidence (Chadbourn Rev.) § 716. We consequently hold that any objection the defendant had to Dupre's testimony went to its weight rather than its admissibility. See *State* v. *Baker,* supra; *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600 (1940).

The trial court's admission of expert testimony as to value of the missing sterling flatware was proper even though the particular flatware pattern was no longer marketed. "Where the expert is asked to evaluate personal property, customarily he bases his evaluation on a personal examination of the property to be evaluated. If, however, the items of personal property are not available, indirect evidence of value is permissible. . . . 'From the very nature of the circumstances, the amount of the loss could not be proven with exactitude and all that is required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate.' " *State* v. *Wilson,* 188 Conn. 715, 722–23, 453 A.2d 765 (1982).

We also see no merit in the defendant's claim that expert testimony regarding the replacement cost of the flatware was improper in the absence of a showing that its market value could not be satisfactorily ascertained. Here, where the items were not present to be examined by the expert, testimony as to replacement costs was an essential factor in determining market value. The value of goods or personalty can be proven by the price at which the same or similar goods are bought and sold. *State* v. *Gyuro,* 156 Conn. 391, 398, 242 A.2d 734 (1968); *Stoll* v. *Judd Co.,* 106 Conn. 551, 561, 138 A. 479 (1927); *Goralnik Hat Co.* v. *Delohery Hat Co.,* 98 Conn. 560, 563–64, 120 A. 283 (1923).

The test employed in determining whether the evidence is sufficient to sustain a verdict is whether the trier could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983). In applying this test, the evidence presented at trial is to be given a construction most favor-

able to sustaining the jury's verdict. Id. We find that the evidence, viewed in that light, was sufficient to prove beyond a reasonable doubt that the value of the items wrongfully taken exceeded the statutory limit of $2000. The court did not err in denying the defendant's motion for acquittal or in refusing to instruct the jury to consider only the charge of larceny in the fourth degree.

## III

The defendant last claims that the court erred in failing to charge that the state bore the burden of proving each and every element of the crime beyond a reasonable doubt and that the court erred in failing to define the term "replacement cost" for the jury. A review of the charge fails to convince us that the court erred in either respect.

In regard to the state's burden of proof, the court addressed precisely what the defendant claims was missing when it stated that "[t]he presumption of innocence however, does not have the effect of evidence itself. The only effect it has is to place upon the state the burden of establishing the element or elements necessary to prove guilt beyond a reasonable doubt." The court emphasized this concept of proof in its explanation of the elements of the crime: "It is essential, therefore, that the State prove beyond a reasonable doubt that the defendant had this unlawful purpose or intention in his mind at the time he took the property or committed the acts which are the basis for the larceny charge. . . . Unless you are satisfied beyond a reasonable doubt that the property described by the police officers was the same property described by Mr. Dupre as having been taken from his house, you may not find the defendant guilty." Where the charge in its entirety presents the case to the jury so that no injustice results, then no error will be found. *State* v.

*Braswell,* 194 Conn. 297, 311, 481 A.2d 413 (1984); *State* v. *Reed,* 174 Conn. 287, 308, 386 A.2d 243 (1978). In considering a charge, critical dissection is not required. The charge as a whole must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984). We hold that the charge, when read in its entirety, fairly and adequately presented the case to the jury.

We decline to consider whether the court erred in not defining "replacement cost" because the defendant neither submitted a request to charge to that effect nor objected or took exception to the charge as given. *State* v. *Kurvin,* 186 Conn. 555, 563–64, 442 A.2d 1327 (1982).

There is no error.

In this opinion the other judges concurred.