[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SUPPRESS
The state has charged the defendant, Michael C. Story, with possession of narcotics with intent to sell, in violation of General Statutes § 21a-278b, and possession of drug paraphernalia, in violation of § 21a-267a. The defendant was arrested after the state police searched his automobile and allegedly found a quantity of cocaine in the trunk and in the console between the front seats. Presently before the court is the defendant's motion to suppress. The court finds in favor of the state.
The police did not have a warrant to search the defendant's car. The state claims the search was legal nevertheless because the defendant consented to it. The defendant denies he gave consent. That dispute presents the fundamental issue to be resolved by the court. CT Page 10284
The court held an evidentiary hearing on the motion. State Troopers James Keeney and Marlon Drummond testified, as did the defendant. The defendant introduced a tape recording of the state police radio transmissions concerning the stop of the defendant's car on Interstate Route I-84 and his subsequent arrest. The state and defendant stipulated as to some facts. Based on the evidence adduced at the hearing, the court finds the following facts:
 1. State Trooper James Keeney was conducting a stationary radar surveillance on Route I-84 westbound in East Hartford at 1:30 A.M. on April 13, 1994.
 2. At that time, he clocked a vehicle driven by the defendant at 82 m.p.h. in a 55 m.p.h. speed zone. Trooper Keeney stopped the vehicle without incident. Prior to approaching the vehicle, Keeney called his headquarters over his cruiser radio and verified that the vehicle was not stolen or otherwise wanted by the police. He also advised headquarters that the vehicle was occupied by "two black males." Keeney then approached the vehicle, briefly interviewed the occupants, and obtained papers of identification from each.
 3. The vehicle was occupied by the defendant, who was the driver, and a companion, Charles Harris. Both the defendant and Harris are black males. Both are physically imposing, each standing well over six feet and weighing about three hundred pounds. The vehicle was owned by Alamo Rent A Car, and the defendant was the lessor.
 4. Trooper Keeney returned to his cruiser to write a speeding ticket for the defendant. Using his radio, he requested from headquarters information regarding the defendant and Harris, specifically whether there were outstanding warrants for their arrest. Headquarters replied in the negative.
 5. Trooper Drummond had overheard Keeney's radio transmissions and decided to provide backup assistance. He arrived at the scene while Keeney CT Page 10285 was in his cruiser writing the ticket.
 6. The two troopers then went back to the defendant's car; Keeney to the driver's side, Drummond to the passenger side. Keeney presented the speeding ticket to the defendant.
 7. At some point prior to returning to the defendant's car, Trooper Keeney resolved to ask the defendant for permission to search it. He did not believe that he had probable cause to justify a search, nor did he even have an articulable suspicion of wrongdoing. Rather, he had a "hunch" that he might find contraband in the vehicle. There were two other factors that Keeney felt were essential to his decision: it was the middle of the night, when traffic was slow, and he had time to linger over this case, and he had a backup present in Trooper Drummond.
 8. After giving the ticket to the defendant, Trooper Keeney asked him to step out of the vehicle. The defendant complied. At that time, both troopers were armed and in uniform, but their guns were holstered.
 9. Trooper Keeney then asked the defendant if there were any illegal substances in the vehicle. The defendant replied that there were not. Keeney asked if he could search it. The defendant replied, "Go ahead — no problem."
 10. Trooper Drummond overheard Trooper Keeney ask if he could search the vehicle and heard the defendant consent in approximately the same words as Keeney testified.
 11. At the time Trooper Keeney asked for permission to search the car, the defendant was not in custody and would have been free to leave if he had refused permission.
 12. Trooper Drummond escorted Harris to the front of the car and kept him occupied during the search of the vehicle that ensued. CT Page 10286
 13. The defendant unlocked the trunk of the car with a key at the request of Trooper Keeney.
 14. Trooper Keeney searched the trunk and found a bag, similar to a money bag. Inside, he found a quantity of a substance that the defendant admitted was cocaine. In reply to Keeney's question, the defendant then stated that there was more drugs in the console between the front seats of the car.
 15. Trooper Keeney immediately informed the defendant that he was under arrest and handcuffed him. Keeney also ordered Trooper Drummond to arrest Harris, which was done.
 16. Trooper Keeney then searched the console and discovered more cocaine.
 17. Trooper Keeney called headquarters over his radio reporting the arrest and requesting a third trooper to oversee the towing of the defendant's vehicle. Keeney and Trooper Drummond then transported the defendant and Harris to headquarters.
"A warrantless search is not unreasonable under either the fourth amendment to the constitution of the United States or article first, § 7, of the constitution of Connecticut if a person with authority to do so has freely consented to the search." State v. Davis,3 Conn. App. 359, 363 (1985). "The state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so." Id. "The validity of the defendant's consent to the search must . . . be determined by viewing the totality of the circumstances." Id.
The factual findings set forth above are based primarily on the testimony of the two state troopers who were present at the scene. Their testimony was essentially consistent, differing only in minor details. Thus, Trooper Keeney testified that he recalled that Trooper Drummond arrived on the scene while he was at the car handing the defendant the ticket. Drummond testified, CT Page 10287 rather, that he arrived while Keeney was still in his cruiser writing the ticket. In all other respects, their testimony was consistent. In particular, Drummond substantiated Keeney's testimony that he had formulated a vague suspicion that indicated a search would be fruitful and that the defendant freely consented to it when asked. Keeney's testimony seemed particularly credible on these key points. He readily admitted that he had no articulable reason for suspecting anything, that he had only a hunch. But, under the circumstances, particularly that he fortuitously had a backup present and had the time to spend, he thought he would take a "shot" and ask permission.
By contrast, the defendant's testimony lacked plausibility and consistency in certain key respects. He was adamant, for example, in testifying that Trooper Keeney had completed his search of the trunk and had arrested him before Trooper Drummond arrived. He testified that Trooper Keeney left Harris in the front seat, unattended, while he searched the trunk and arrested the defendant. Obviously, this version of the events would be very helpful to the defense because it would eliminate Drummond as witness to the consent. But it defies common sense. It is simply not plausible that a state trooper, acting alone on a deserted highway in the middle of the night, would undertake to search a vehicle occupied by two very large young men, one of whom is unattended and out of the trooper's line of sight during the search.
The defendant testified that he specifically refused to consent to the search when asked by Trooper Keeney. He stated that Keeney then ordered him out of the car. He stated that after he complied, Keeney reached into the driver's compartment and pushed a button that released the trunk latch. He stated that Keeney then marched him to the back and searched the trunk, leaving Harris in the front seat. He stated that he felt intimidated, that he had no choice. He said that his feelings were based on the experiences he had had with the police and how he perceived the police deal with minorities. The defendant testified that he had been arrested one time because he had refused to identify himself after being stopped by a Hartford police officer on a street in Hartford. CT Page 10288
In addition to the implausibility of the defendant's testimony that Trooper Keeney conducted the search and arrest without a backup, there are other factors that lead the court to give greater credit to the troopers' version of the events. First, the court takes into account the interest that the defendant has in the outcome. He has an obvious, powerful incentive to convince the court that he refused to consent to the search. That would be the only barrier to the use of the contraband as evidence against him. By contrast, the troopers, especially Trooper Drummond, when they testified had no interest other than a professional one in the outcome of the case. This may be a strong interest, but in the court's view, it is not as compelling as that which the defendant had.
Based on all of the foregoing considerations and in light of the evidence adduced at the hearing, the court finds that the defendant freely and knowingly consented to the search of his vehicle when requested by Trooper Keeney.
The defendant argues, in his brief filed today with the court, that the search by the police constituted an illegal investigatory stop; that is, that it extended beyond that required by the circumstances. This argument may not be sustained. It is undisputed that the police were justified in stopping the vehicle for speeding and detaining the defendant long enough to give him a ticket. It was during that process that the police obtained the defendant's consent to go further and search the vehicle. Thus the portion of the investigatory stop that is in question was exempted from criticism by the defendant's consent.
Lastly, in his brief, the defendant suggests that Trooper Keeney decided to search his car because he and Harris are black. If that were so, the court would not hesitate in finding the search illegal and suppressing the evidence. But there is no evidence that Keeney harbored any such motive. On cross-examination, he vehemently denied that race played any part in his decision. "Absolutely not," he stated. When asked if young black males were targets of suspicion, he replied CT Page 10289 "Not by me." Furthermore, there was no evidence whatsoever presented to the court that would contradict or undermine that unequivocal testimony. The police radio transmissions in this case have nothing in them to support a theory that the state police targeted black people for searches following traffic stops. The only fact of possible relevance is that Keeney advised headquarters, prior to approaching the car, that the car contained two black males. He also testified, however, that it is standard procedure to provide headquarters as many details as possible so as to facilitate later identification and apprehension in the event the arresting officer is disabled or killed by the people he has stopped. In the absence of any evidence of some invidious intent, that is a plausible explanation for the radio transmission in question.
Finally, the court notes that Trooper Keeney told Trooper Drummond of his proposal to search the vehicle in advance. Drummond, who is black and had come to the scene on his own initiative, then actively assisted in the search by holding Harris out of the way. In the absence of any evidence and based only on the speculation of the defendant, the court cannot find that the stop and subsequent search of the defendant's vehicle was the result of racially based, illegal considerations.
The court concludes that the police were justified in stopping the defendant's vehicle. The court further finds that the defendant thereafter consented to a search of the vehicle. It follows that the defendant's motion to suppress the fruits of that search must be denied.
MALONEY, J.