STATE OF CONNECTICUT *v.* MILTON SPIKES
(AC 27547)

McLachlan, Lavine and McDonald, Js.

544

Argued May 29—officially released December 16, 2008

*Ruth Daniella Weissman*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Milton Spikes, appeals from the judgments of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), and larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (2) and 53a-119 based on a February 19, 2005 incident, and of attempt to commit burglary in the second degree in violation of General Statutes §§ 53a-102 (a) (2) and 53a-49 (a) (2), burglary in the second degree in violation of General Statutes § 53a-102 (a) (2), and criminal mischief in the second degree in violation of General Statutes § 53a-116 (a) (1) based on a February 23, 2005 incident. The charges against the defendant were for crimes that occurred at 291 Church Street, Wethersfield. On appeal, the defendant claims that (1) the evidence presented at trial was insufficient to support the convictions of larceny in the second degree, burglary in the third degree, burglary in the second degree and attempt to commit burglary in the second degree, (2) the trial court instructed the jury improperly on the definition of "value," (3) General Statutes § 53a-121, which defines the word "value" for purposes of Connecticut's larceny offenses, is unconstitutionally vague, (4) the court improperly granted the state's motion to consolidate multiple claims against

him and (5) his right to a fair trial was violated because the prosecutor improperly attempted to shift the burden of proof to the defendant. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On February 19, 2005, shortly after 2:30 p.m., the police responded to a call to a residence at 291 Church Street. The owners of the residence, Sean Stearley and Kristen Stearley, reported as missing from their home more than $5000 worth of jewelry and $1100 in cash. The Stearleys had left their home about 11:30 a.m., locked their door and returned home about 2:30 p.m. to find their property missing.

At about the time of the theft, between 11:30 a.m. and 2:30 p.m., the defendant had been seen several times in the immediate vicinity of 291 Church Street. Approximately one hour before being dispatched to the scene, Officer Thomas Mitney of the Wethersfield police department observed a man walking on Church Street, whom he later identified as the defendant. The defendant was wearing a hooded sweatshirt and dirty, light tan work pants. Mitney also observed the defendant a second time when Mitney was driving to 291 Church Street. Then the defendant was walking near the intersection of the Silas Deane Highway and Church Street. Gary Buyak, a United States Postal Service carrier, also had observed the defendant that day standing outside 291 Church Street sometime between 2 p.m. and 2:30 p.m.

Four days later, on the morning of February 23, 2005, Sean Stearley again called the police to report suspicious footprints in his backyard. Snow had fallen the night before, and the prints led to several possible points of entry to his house. After arriving at 291 Church Street, Officer Tammy Austin of the Wethersfield police department observed that the footprints in the snow

contained the brand name "Lugz." She also observed that one of the outside windows that led to the Stearleys' basement had been removed and that the left window-pane was smashed. The footprints also led to a screened in porch. The screen had been pushed in from the outside, and there were similar footwear impressions on the floor inside the screened in area.

At approximately the same time, Officer Anthony DeMonte of the Wethersfield police department observed the defendant stumbling in the road near the intersection of Morrison Avenue and Tifton Road, about two blocks from 291 Church Street. DeMonte stopped to speak to the defendant. The defendant provided conflicting stories regarding the location from which he was coming. While DeMonte was speaking with the defendant, he heard a radio transmission regarding suspicious footprints. DeMonte then observed that the defendant was wearing a pair of black boots, which displayed the "Lugz" brand logo in the middle of the sole. During his discussion with the defendant, DeMonte learned that the defendant had on his person several pieces of jewelry. Called to the scene, Sergeant Delroy Warmington of the Wethersfield police department observed that the defendant's clothing matched that of a description of a suspect in the February 19 burglary. Warmington then transported the jewelry found on the defendant's person to 291 Church Street where the Stearleys identified it as some of the items that were taken from their home on February 19. Four pieces of the Stearleys' jewelry were not recovered from the defendant. At this time, the defendant was arrested.

Before trial, the court granted the state's motion to consolidate for trial the charges arising from the February 19 and February 23 incidents. Thereafter, the jury found the defendant guilty on all five counts. At sentencing, the court merged the charges of burglary in the second degree and attempt to commit burglary in the

second degree, as to the February 23 incident, and sentenced the defendant to a total effective term of seventeen years imprisonment, followed by three years of special parole. This appeal followed.

## I

The defendant asserts that the evidence presented at trial was insufficient to support his convictions of larceny in the second degree, burglary in the third degree, burglary in the second degree and attempt to commit burglary in the second degree.

"The standard of review we apply to a claim of insufficient evidence is well established. . . . [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Ramirez*, 107 Conn. App. 51, 62, 943 A.2d 1138, cert. granted on other grounds, 287 Conn. 915, 950 A.2d 1290 (2008). "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State v. Leggett*, 94 Conn. App. 392, 398, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

## A

The defendant claims that there was insufficient evidence to support his conviction of larceny in the second degree as to the incident on February 19, 2005. The defendant argues that there was insufficient evidence from which the jury could have found that the value of

the property that was stolen from 291 Church Street on February 19, 2005, was more than $5000. We disagree.

"A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property . . . exceeds five thousand dollars . . . ." General Statutes § 53a-123 (a). General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property . . . at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime."

In support of his claim, the defendant argues that both Kristen Stearley and a representative of the Stearleys' insurance carrier testified only as to the replacement cost of the unrecovered jewelry. The defendant argues further that the relevant value to use in determining the value of jewelry is the fair market value. The defendant therefore concludes that the state failed to meet its burden of proof because it failed to elicit sufficient information as to the market value of used jewelry. We disagree.

In this case, the state put into evidence a list of all the stolen items with a figure for each piece of stolen jewelry, which the Stearleys gave to the police on February 19. The figures listed represented to the best of the Stearleys' recollection the original purchase price of the stolen jewelry at a total of $5250.

The state also put in evidence a written claim filed by the Stearleys with their insurance carrier for the unrecovered jewelry. A representative of the Stearleys' insurance company testified that the company valued the four items that were not recovered from the defendant at $3689.85. See *State* v. *Taylor*, 196 Conn. 225, 229, 492 A.2d 155 (1985). The Stearleys also testified they had purchased those items for approximately

$1850 in 1987, 1991, 1992 and 1994. As instructed by their insurance company, the Stearleys testified that they searched the Internet to find similar jewelry and its price as comparable sales. The Stearleys concluded, on the basis of their research, that both the actual cash value and the replacement cost of the four nonrecovered items was $3689.85.

It is well established that an owner of property is competent to testify as to the value of his or her property. *State* v. *Baker*, 182 Conn. 52, 60, 437 A.2d 843 (1980). This rule reflects the common experience that owners are familiar with their property and know what it is worth. Id. Whether an owner's testimony as to the market value provides sufficient information to support a jury verdict depends on the circumstances of each case. Id., 63. "An owner must of necessity rely on other sources for his knowledge of value." *State* v. *Davis*, 3 Conn. App. 359, 367, 488 A.2d 837 (1985). An owner may estimate the worth of his or her property, and the jury must consider the weight of the owner's testimony. Id. The state does not need to prove the value of property with exactitude. Id., 368. The state is required only to "lay a foundation which will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) Id.

Our Supreme Court has stated that "[t]he expressions actual value, market value, or market price, when applied to any article, mean the same thing. They mean the price or value of the article established or shown by sales public or private in the way of ordinary course." (Internal quotation marks omitted.) *State* v. *Frilando*, 182 Conn. 397, 400, 438 A.2d 413 (1980). It also is recognized that the replacement cost of jewelry may not differ from its fair market value. See *State* v. *Paoletto*, 181 Conn. 172, 183–84, 434 A.2d 954 (1980).

The list given to police reflected that the Stearleys had paid $3400 for the items found with the defendant,

and the Stearleys testified that the purchase figures on the list were accurate. The state also put into evidence photographs of the recovered jewelry that showed no damage to the items. The jury also was able to apply its experience in the affairs of life particularly as to inflation. See *State* v. *Browne*, 84 Conn. App. 351, 389, 854 A.2d 13 (affirming verdict when jury able to view some stolen jewelry, owner testified as to its value and state presented several types of valuation methods), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). We also conclude that the jury had a sufficient basis from the Stearleys' testimony to find that the jewelry had appreciated in the time since the Stearleys had purchased it. See id., 388. Unlike the situation with electronic equipment, which is generally subject to prompt depreciation, we have recognized that jewelry may appreciate in value. See id., citing *State* v. *Paoletto*, supra, 181 Conn. 182.

Accordingly, we conclude that the jury reasonably could have found that the defendant removed jewelry from the Stearleys' residence with a value of more than $5000 at the time of the crime

The defendant claims on appeal that the court should not have instructed the jury to consider the $1100 in cash that was stolen during the February 19 burglary. In support of this claim, the defendant argues that the state's amended long form information alleged that the stolen property consisted of "assorted jewelry . . . ." This, according to the defendant, deprived him of notice of the fact that the jury would consider the $1100 toward the monetary threshold for larceny in the second degree, and it was therefore unfairly prejudicial.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient

precision to enable him to prepare his defense and to avoid prejudicial surprise and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Internal quotation marks omitted.) *State* v. *Franko*, 199 Conn. 481, 490, 508 A.2d 22 (1986). When the nature of the crime as charged in the information and the content of the instruction to the jury differ only to the extent that they describe two different methods of committing the same offense, the defendant is able to establish an infringement of constitutional rights only if he can demonstrate unfair surprise or prejudice. Id. A defendant cannot establish unfair surprise when the state presents evidence that is consistent with the uncharged theory of the crime and the defendant, as here, fails to object to it. Id., 490–91. To show prejudice, a defendant must show that he would have changed his defense in some way if the state had included in the information the uncharged theory. Id., 491.

In this case, the court's instruction to the jury that it could consider the stolen cash did not change any of the elements of the crime with which the defendant was charged. The nature of the stolen property is not an element of larceny in the second degree. See General Statutes § 53a-123 (a) (2). We conclude that the defendant cannot show unfair surprise, as the state offered, and the court admitted, evidence of the stolen $1100, and the defendant did not object to this evidence. The money was included in the owners' February 19 list of stolen property. The Stearleys testified that the money was stolen. The Stearleys' insurance adjuster testified as to the Stearleys' claim for stolen money.

The defendant also does not suggest that he would have changed his defense if he had known that the state proposed to use the evidence of the stolen cash against him. The defendant argues that he might have testified and been believed by the jury because the cash was

stolen on February 19 and when arrested days later, he was still wearing the same thin windbreaker. This scenario ignores the fact that the theft of the cash was presented in the state's case and that his decision to testify would be made during his case, which followed the state's case. We see no prejudice in this respect as a result of the court's instruction to the jury. Accordingly, we conclude that the defendant has failed to show any unfair surprise or prejudice caused by the language of the substitute information.

We conclude that there was therefore sufficient evidence to support the verdict against the defendant for larceny in the second degree.

B

The defendant next claims that there was insufficient evidence to support his conviction of burglary in the third degree at 291 Church Street on February 19, 2005. We disagree.

In support of his claim, the defendant argues that the only evidence connecting him to the burglary was that the police found him in possession of some of the property that was stolen on February 19 and that he was seen at about the time of the February 19 burglary standing in front of 291 Church Street. The defendant also argues that there was no forensic evidence linking him to the burglary and no sign of forceful entry into 291 Church Street on February 19.

"A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-103 (a). A defendant's conviction may rest on circumstantial evidence. *State* v. *Cates*, 202 Conn. 615, 627, 522 A.2d 788 (1987). There is no legal distinction between direct and circumstantial evidence, although the inferences drawn from circumstantial evidence

must be rationally based on something more than mere speculation and conjecture. Id.

In the present case, the defendant was seen in close proximity to 291 Church Street by a Wethersfield police officer, both shortly before and shortly after the February 19 burglary. Shortly before the Stearleys discovered that their property had been stolen from their home that day, a United States Postal Service worker observed a man standing in front of 291 Church Street. That man was wearing the same clothes that the defendant wore at the time of his arrest on February 23. The defendant also later had in his possession all but four of the jewelry items that were stolen during the February 19 burglary. Although the defendant argues that there was nothing in the record to indicate unlawful entry into 291 Church Street on February 19, there was evidence that the doors to the attached garage had deteriorated and that entry could be made without force. Furthermore, "[f]orcible entry, with or without damage, is not an element of burglary." *State* v. *Garrett*, 42 Conn. App. 507, 513, 681 A.2d 362, cert. denied, 239 Conn. 928, 683 A.2d 398 (1996).

This court has found sufficient evidence under similar circumstances to sustain a verdict of guilty of burglary in the third degree. In *State* v. *Correa*, 57 Conn. App. 98, 106, 110, 748 A.2d 307, cert. denied, 253 Conn. 908, 753 A.2d 941 (2000), the court affirmed the conviction of a defendant for burglary in the third degree on the basis of the following evidence: (1) on the day of the burglary, a car belonging to the defendant's girlfriend was seen parked outside the victim's home; (2) the defendant matched a witness' description of a man who was standing in the victim's driveway at about the time of the burglary; and (3) the police found some of the victim's stolen jewelry in the apartment where they found the defendant. In the present case, on the basis of evidence that the defendant was seen at or near 291

Church Street at about the time of the burglary and that he had on his person at the time he was arrested some of the jewelry stolen from the premises, we conclude that the jury reasonably could have found that he illegally entered 291 Church Street on February 19, 2005, and stole that jewelry. We conclude that there was, therefore, sufficient evidence to sustain the verdict against the defendant for burglary in the third degree on February 19.

C

The defendant next claims that there was insufficient evidence to support his conviction of burglary in the second degree and attempt to commit burglary in the second degree as to the incident on February 23. The defendant argues that there was insufficient evidence from which the jury could have found that on February 23, 2005, he entered the dwelling at 291 Church Street. The defendant also argues that even if the jury reasonably could have found that he illegally entered the dwelling, there was insufficient evidence from which it could have found that he did so with the intent to commit a crime therein. We disagree.

"A person is guilty of burglary in the second degree when such person . . . (2) enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such a dwelling, with intent to commit a crime therein." General Statutes § 53a-102 (a). "Any penetration, however slight, of a space within the . . . [building] by the defendant, or by any part of his body . . . is a sufficient entry. Accordingly, it is a sufficient entry when the defendant reaches his finger, hand, or arm inside . . . the [building]." (Internal quotation marks omitted.) *State* v. *Smith*, 156 Conn. 378, 382, 242 A.2d 763 (1968). Photographs of the damaged condition of a door support the inference that a defendant entered at least minimally

into a victim's dwelling. See *State* v. *Adorno*, 45 Conn. App. 187, 195–96, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997).

As to intent, in many cases, intent can be proved only by circumstantial evidence. *State* v. *Hampton*, 66 Conn. App. 357, 364, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). It is proved by a defendant's conduct. Id. "It is a basic principle of law that common sense is not to be left at the courtroom door." (Internal quotation marks omitted.) Id., 365. Evidence that a defendant attempted to enter a dwelling forcibly provides a reasonable basis for the jury to infer the intent to commit theft. Id.

In the present case, the state introduced testimony that there were footprints in the Stearleys' yard that matched the defendant's boots. The police had observed only one type of footprint in the snow. The prints led directly to the screened in porch area. The police also found similar prints inside the screened in porch. The state also introduced photographs that showed the screen to the door had been partially removed and a window damaged. Because the state may prove entry with circumstantial evidence; *State* v. *Smith*, supra 156 Conn. 382; we conclude that the jury reasonably could have found that the defendant entered the dwelling at 291 Church Street. The law in Connecticut also allows a jury to infer the defendant's intent to commit a crime from the fact that he forcibly entered the home of another. See *State* v. *Hampton*, supra, 66 Conn. App. 365. In the present case, moreover, the police also found jewelry on the defendant's person that was taken during the February 19 robbery of the same dwelling. "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than [to prove bad character], such as to prove intent . . . ." Conn. Code Evid. § 4-5 (b). Accordingly, we conclude

that the jury reasonably could have found that the defendant entered the dwelling at 291 Church Street with the intent to commit larceny. We conclude that there was, therefore, sufficient evidence to sustain the verdict against the defendant for burglary in the second degree and attempt to commit burglary in the second degree.

II

The defendant next claims that the court failed to instruct the jury adequately on the definition of the word "value" as to the charge of larceny in the second degree.[1]

The defendant requests review of his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because he failed to preserve this claim at trial. He did not take exception to the charge or submit a contrary request to charge.[2]

"[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably

---

[1] The court instructed the jury as follows: "If you find that the defendant is guilty of larceny, you must go on to consider the value of the property involved. For you to find the defendant guilty of larceny in the second degree under General Statutes § 53a-123 (a) (2), the state must prove beyond a reasonable doubt that the value of the property taken exceeded $5000. The statute sets forth the standard to be used in determining the value of property. Value means the market value of the property at the time and place of the crime. Property also includes cash. While the law provides that an owner of property is competent to testify as to its value, it is for you to determine, however, based upon your evaluation of all the evidence before you, the value of the property in question."

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Serrano*, 91 Conn. App. 227, 244, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005). In determining whether the jury was misled, "[i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *White*, 97 Conn. App. 763, 773, 906 A.2d 728, cert. denied, 280 Conn. 939, 912 A.2d 476 (2006).

The defendant argues that the court was required to "instruct the jury that it needed to ascertain the 'fair market value' . . . of used jewelry, as something legally quite different than 'replacement [cost]' . . . ." The defendant claims that the state offered testimony only as to the jewelry's replacement cost. We disagree because, as previously pointed out, the state presented evidence as to the present actual cash value as well as the replacement cost of the unrecovered jewelry.

General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property . . . at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime."

In this case, the court instructed the jury that value meant "the market value of the property at the time and place of the crime," but it did not expressly inform the jury that it should consider the cost to replace the jewelry if it could not satisfactorily ascertain its market value at the time and place of the crime. Our Supreme

Court has held that it does not deprive the defendant of a fundamental right when the court fails to provide this instruction to the jury. *State* v. *Frilando*, supra, 182 Conn. 400. We conclude that there is no fundamental right to a jury instruction that includes the statutory definition of value, especially when the jury has heard testimony at trial of the owner's valuation in terms of the actual cash value at the time and place of the crime. As pointed out previously, our Supreme Court has stated that "actual value, market value, or market price . . . mean the same thing." (Internal quotation marks omitted.) Id. Accordingly, the court's instruction did not deprive the defendant of a fundamental right.

In this case, the state presented evidence of the unrecovered jewelry's present cash value and the original purchase price of all the stolen jewelry. The state also presented evidence that the unrecovered jewelry's present replacement cost and its present actual cash value were identical. See *State* v. *Paoletto*, supra, 181 Conn. 183–84. Accordingly, the deficiency, if any, in the court's instruction was harmless beyond a reasonable doubt. See *State* v. *Golding*, supra, 213 Conn. 240; see also *State* v. *Taylor*, supra, 196 Conn. 230–31. We conclude that the instruction did not violate the defendant's fundamental right to a fair trial.

III

The defendant next claims that § 53a-121, which defines the word "value" for purposes of Connecticut's larceny offenses, is unconstitutionally vague. The defendant argues that § 53a-121 "fails to specify how [fair market value] can or cannot be 'satisfactorily ascertained' . . . ."[3] We disagree.

---

[3] The defendant also claims that General Statutes § 53a-121 fails to specify adequately the appropriate circumstances for applying replacement cost or for applying the statutory default value of "less than fifty dollars . . . ." The defendant argues further that § 53a-121 is unconstitutionally vague as it applies to the facts of this case because the state failed to establish the jewelry's fair market value via an expert. These arguments are without merit.

The defendant did not preserve his claim, but we will review it because the record is adequate and the alleged error is of constitutional magnitude, thus satisfying the first two prongs of the *Golding* test. See *State* v. *Burton*, 258 Conn. 153, 158, 778 A.2d 955 (2001).

"[T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning. . . . The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." (Citation omitted; internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204–205, 848 A.2d 1206 (2004).

General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property . . . at the time and place of the crime *or*, *if such cannot be satisfactorily ascertained*, the cost of replacement of the property . . . within a reasonable time after the crime." (Emphasis added.) Our Supreme Court has held that market value is the "price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." (Internal quotation marks omitted.) *O'Brien* v. *Board of Tax Review*, 169 Conn. 129, 138, 362 A.2d 914 (1975). In this case, the court instructed the jury to determine the value of the property on the basis of its market value at the time of the crime. The court

instructed the jury further that it was to ascertain this value on the basis of "all the evidence . . . ." The court did not instruct the jury to consider any valuation methods other than market value. Common experience tells us that a valuation method is not arbitrary if it is based on the cumulative effect of all of the evidence admitted at trial. The absence of expert testimony also does not render arbitrary the jury's determination. Lay testimony on the issue of value enables a jury to make a reasonable and fair estimate of value. *State* v. *Davis*, supra, 3 Conn. App. 368. It is well established that an owner of property is, as was the case here, competent to testify as to the value of his or her property, and the weight of that testimony is left to the jury. Id., 367.

We conclude that the definition of value in § 53a-121 that was read to the jury provided clear direction for applying market value in this case. We conclude therefore that § 53a-121 is not unconstitutionally vague as it applies to the facts of this case.

IV

The defendant next contends that the court abused its discretion when it granted, in part, the state's motion to consolidate for trial the charges arising from the February 19 and February 23 incidents. The defendant argues that the charges arose from events that took place on different days and that the state failed to provide sufficient evidence concerning his modus operandi.

General Statutes § 54-57 provides that "[w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." "In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may

not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Fauci*, 87 Conn. App. 150, 156, 865 A.2d 1191 (2005), aff'd, 282 Conn. 23, 917 A.2d 978 (2007).

Our Supreme Court has held that a trial court has discretion generally to admit evidence of one crime in the trial of another to establish a common scheme or plan. See *State* v. *McKenzie-Adams*, 281 Conn. 486, 527, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). Evidence of a common plan is relevant because it bears on the defendant's motive, identity and intent. *State* v. *Randolph*, 284 Conn. 328, 342, 933 A.2d 1158 (2007). We recognize that in cases that do not involve sex crimes, the law requires a more stringent standard to determine whether evidence of other crimes is admissible to establish a common scheme or plan. Id., 341.

In the present case, when the court granted the state's motion to consolidate the charges against the defendant, it took note of the fact that the evidence with respect to each charge was cross admissible. Although the court did not specify what evidence was cross admissible, the record provides ample evidence to support its decision.

We conclude that the court was within its discretion to admit evidence that the defendant had in his possession the jewelry that was taken from 291 Church Street on February 19, in order to show that he intended to commit larceny when he entered the same residence on February 23. The court was equally within its discretion to admit the evidence of the fact that the defendant had forced his way into 291 Church Street on February

23, in order to show that he was involved in the February 19 burglary.

To challenge successfully the court's decision to consolidate the February 19 and February 23 charges for one trial, the defendant must prove that the court's decision resulted in substantial injustice. See *State* v. *Fauci*, supra, 87 Conn. App. 156. In circumstances such as this, in which evidence of separate crimes is cross admissible, a defendant is not ordinarily prejudiced by a single trial. See *State* v. *McKenzie-Adams*, supra, 281 Conn. 527. The defendant has not referred to any extraordinary circumstances present in this case. Accordingly, we conclude that the court acted properly and within its discretion when it consolidated the charges against the defendant for a single trial. The defendant's claim therefore fails.

V

The defendant argues next that the judgments must be reversed because the prosecutor improperly shifted the burden of proof to the defendant. The defendant argues that the prosecutor was barred from reminding the jury at the beginning of her argument that "[t]here was no evidence or alternative suggestion as to how [the defendant] came into possession of [the stolen] jewelry." We disagree.

A claim of prosecutorial impropriety warrants review even if the defendant fails to preserve it at trial. *State* v. *D'Haity*, 99 Conn. App. 375, 382, 914 A.2d 570, cert. denied, 282 Conn. 912, 924 A.2d 137 (2007). A claim of prosecutorial impropriety requires a two step process on appellate review. Id., 383. "The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether the [impropriety] deprived a defendant of his due process right to a fair trial. . . . [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing

arguments." (Citation omitted; internal quotation marks omitted.) Id., 383–84.

Our first consideration is whether the prosecutor's statement during closing arguments was improper. See generally *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987).

It is not improper for a prosecutor to refer to the fact that a defendant has failed to explain the state's physical evidence. *State* v. *D'Haity*, supra, 99 Conn. App. 385 (holding that it was not improper during closing argument for prosecutor to address fact that defendant did not explain abrasions found on victim's shoulder and presence of semen on victim's underwear). When viewed in the context of a closing argument in which the prosecutor repeatedly has referred to the state's burden of proof, "the prosecutor's questioning of the defendant's failure to explain [the state's evidence] merely appeal[s] to the jury's common sense." Id. The prosecutor is entitled to comment on the lack of support for the defendant's theory of innocence. Id. Such a statement reasonably may be considered to refer to the fact that the defense never offered any evidence to contradict the prosecution's evidence. *State* v. *Hicks*, 56 Conn. App. 384, 394, 743 A.2d 640 (2000). In contrast to a prosecutor's argument that refers to the defendant's personal failure to testify, a prosecutor may make general comments that concern the quality of the defendant's evidence or the lack of evidence. Id.

In the present case, the prosecutor stated several times in her closing argument that the state had the burden of proving every element of the crimes charged. She was within her discretion to comment in her closing argument on defense counsel's failure to provide during the trial any evidence or alternative suggestion as to why the defendant possessed the stolen jewelry at the

time he was arrested. See *State* v. *Hicks*, supra, 56 Conn. App. 394; see also *State* v. *D'Haity*, supra, 99 Conn. App. 384. The defendant's allegation of impropriety in this case is based on a single comment made by the prosecutor that was not repeated. See *State* v. *D'Haity*, supra, 385.

The prosecutor also made clear to the jury in her rebuttal argument that the state faced the burden of proving the defendant's guilt beyond a reasonable doubt. She responded to the defendant's closing argument as follows: "I have to agree with [defense counsel] on at least one point—that it's the state's burden in any case to prove each and every element beyond a reasonable doubt. He accused me of trying to shift the burden onto the defendant. If you feel that in any of my comments that I did try to do that, that is certainly— is not my intent. The burden cannot shift to the defendant. It is my burden to prove this case." We accordingly conclude that the defendant's argument is without merit.

The judgments are affirmed.

In this opinion the other judges concurred.